**STATE of Iowa, Appellee,**

v.

**Roy Harold JOHNSON, Appellant.**

No. 93–1556.

Supreme Court of Iowa.

Oct. 25, 1995.

Guy P. Booth, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Denver D. Dillard, County Attorney, and Russell G. Keast, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

In this further review case, the defendant, Roy Harold Johnson, convicted of indecent contact with a child, argues the district court erred in admitting during the State's rebuttal case the alleged victim's videotaped statement as a prior consistent statement under Iowa rule of evidence 801(d)(1)(B). We agree and, therefore, vacate the court of appeals decision, reverse the district court judgment and remand for a new trial.

I. *Background facts and proceedings.* The trial information charged defendant with committing indecent contact with a child on

or about November 15, 1992. *See* Iowa Code § 709.12 (1991). The alleged victim was defendant's thirteen-year-old adoptive daughter, A.J. Defendant pled not guilty and the case proceeded to a jury trial.

At trial, defendant's daughter testified as the only witness in the State's case-in-chief. She stated she was six or seven years of age when her mother, Rhonda, married the defendant. Although defendant did not adopt her until 1988 when she was eight or nine years of age, she testified defendant's sexual advances began before the marriage and continued up until November 15, 1992.

At all material times, defendant was employed and possessed advanced educational degrees. On November 15, 1992, A.J. was in the presence of defendant while he was preparing to leave on a business trip. A.J. testified defendant put his hands on her breasts for approximately five minutes after she refused to do the household chores he had assigned her. A.J. testified such touching occurred often when she would not do her chores and, specifically, on the seven days preceding November 15.

Defendant and Rhonda separated in June 1992. Following the separation, A.J. resided with her mother but the two did not get along. Neither Rhonda nor defendant approved of the relationship A.J. was having with her boyfriend. In late summer 1992, Rhonda eventually asked A.J. to leave her house and reside with defendant.

Defendant testified as the only witness for the defense. He stated he informed his daughter, prior to November 15, 1992, that he was going to schedule her to attend an overnight visit at a Masonic Children's Home in Illinois. Such an overnight visit is a prerequisite for permanent residency at the home. Defendant testified he seriously considered placing her in the home because she and Rhonda were not getting along, both defendant and Rhonda were having difficulty disciplining her, and both were concerned about A.J. having a serious relationship with a boyfriend.

Defendant denied all allegations levied against him by A.J. Defendant testified his daughter made up the story of alleged incidents of sexual touching in order to avoid having to live at the Masonic home and to continue her relationship with her boyfriend. Defendant testified he believed his daughter would rather live at a local foster home than with either Rhonda or him so she could continue contact with her boyfriend. Defendant also testified his daughter may have made up stories because he would not let her attend a party one night prior to November 15, 1992.

On rebuttal, the State introduced into evidence a videotaped interview conducted on November 18, 1992 between A.J. and Carol Nigh, an interviewer at St. Luke's Child Protection Center (Center).[1] The Center receives referrals from the Iowa Department of Human Services and law enforcement agencies for the purpose of interviewing children when there are allegations of physical abuse, neglect or sexual abuse. In the interview, A.J. recounted many instances in which defendant allegedly had committed sexual acts upon her and stated she did not originally report the abuse because she was not sure she would be believed. The interview occurred three days after the last incident of alleged indecent contact and after defendant's threat to place A.J. in the Masonic home.

At trial, defendant objected to the State's use of the videotape, claiming it was not proper rebuttal evidence and irrelevant. Defendant also contended that the videotape had no probative value, was cumulative, and that A.J.'s testimony-in-chief should stand on its own merit. Over defendant's objections, the district court admitted the videotape as nonhearsay evidence, specifically as a prior consistent statement under Iowa rule of evidence 801(d)(1)(B) and *State v. Gardner*, 490 N.W.2d 838 (Iowa 1992).

After overruling defendant's objection, the court allowed the videotaped interview to be

1. Carol Nigh testified for the State during its rebuttal case as a foundation witness for the videotaped statement of A.J. At trial, defendant objected to the admissibility of her statements. He argued the testimony was not permissible rebuttal evidence and later challenged the district court's ruling on appeal.

shown to the jury. During deliberations, the jurors requested to view the videotape again. Over defendant's renewed objections concerning relevance, undue prejudice, and impermissible rebuttal evidence, the court allowed the jury to view the videotape a second time. Both defendant and the State are in agreement that the videotaped statement mirrored A.J.'s testimony and no statements inconsistent with her trial testimony were received into evidence.

■ After his conviction by the jury, defendant filed a motion for new trial, claiming, among other things, that the court committed reversible error by allowing the State to introduce as rebuttal evidence A.J.'s videotaped statement made at the Center. Defendant properly preserved error by making a timely and specific objection at trial.[2] In his motion for new trial, defendant argued the videotape was not proper rebuttal evidence, but rather hearsay, cumulative, repetitious and unduly prejudicial. The court denied defendant's motion for new trial and proceeded to the sentencing phase of the trial. Over defendant's request for a deferred judgment, the court imposed the maximum incarceration period for an aggravated misdemeanor, a period not to exceed two years. *See* Iowa Code §§ 709.12, 903.1(2).

Defendant appealed his conviction and sentence. Upon our transfer of the case, the court of appeals affirmed the conviction, but vacated the sentence and remanded for resentencing. We granted defendant's and the

State's separate applications for further review. *See* Iowa Code § 602.4102(4).

II. *Admissibility of the videotaped prior consistent statement as rebuttal evidence.* Defendant contends the district court erred in allowing the videotaped "consistent statement" interview of A.J. as part of the State's rebuttal case. Defendant relies on either of two reasons:

(1) Our decision in *State v. Gardner*, 490 N.W.2d 838 (Iowa 1992) is not applicable to the present case because the facts are distinguishable and, under Iowa rule of evidence 801(d)(1)(B), the videotape did not amount to "rebuttal" evidence; or

(2) if we hold *Gardner* is not distinguishable, we should overrule it and adopt instead the analysis set forth in *Tome v. United States*, 513 U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) and hold the offered statement must have preceded in time the origin of the alleged improper motive by the complainant, A.J., to lie.

■ a. *Standard of review.* We review the district court's ruling on the admissibility of the videotaped prior consistent statement for an abuse of discretion. *Gardner*, 490 N.W.2d at 841.

■ b. *Use of the videotaped interview as rebuttal evidence.* We first must determine whether the district court correctly held the videotape was proper rebuttal evidence under Iowa rule of evidence 801(d)(1)(B).[3] Rebuttal evidence is that

---

**2.** The State argues that defendant's failure to raise "hearsay" as a specific objection to admission of the videotaped interview forecloses his opportunity to raise the issue on appeal. We disagree. *See State v. Hepperle*, 530 N.W.2d 735, 739 (Iowa 1995) (stating an objection, that alerts the trial judge to specific grounds on which a party claims evidence is inadmissible, preserves the issue for appellate review). On at least two occasions, defendant objected to the videotaped interview as improper rebuttal evidence. The district court overruled defendant's objection and admitted the interview as a prior consistent statement under the reasoning and discretion granted in *State v. Gardner*, 490 N.W.2d 838 (Iowa 1992). Based on the court's stated reasons for overruling defendant's objection, we find defendant's specific objection alerted the trial court to his contentions on appeal that the videotaped interview was not proper rebuttal evidence and, moreover, implicitly that the interview was not

an admissible prior consistent statement for the reasons later discussed by the United States Supreme Court in *Tome v. United States*, 513 U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995).

**3.** Iowa rule of evidence 801(d)(1)(B) states in pertinent part:

(d) **Statements Which Are Not Hearsay.** A statement is not hearsay if—

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive

. . . .

*Id.* This rule is, in substance, identical to federal rule of evidence 801(d)(1)(B).

which explains, repels, controverts, or disproves evidence produced by the opposing party. *State v. Hephner*, 161 N.W.2d 714, 718 (Iowa 1968). The trial court has "considerable discretion" in admitting rebuttal evidence, *State v. Webb*, 309 N.W.2d 404, 411 (Iowa 1981), including discretion to admit in rebuttal evidence that technically could have been offered as part of the State's case-in-chief:

> It is ... thoroughly settled that the fact testimony used in rebuttal might have been used as part of the [S]tate's main case does not render it inadmissible in rebuttal if it rebuts some of the matters testified to by defendant's witnesses.

*State v. Willey*, 171 N.W.2d 301, 302 (Iowa 1969) (quoting *Hephner*, 161 N.W.2d at 718). Also, we have held the use of prior statements consistent with a witness's testimony is appropriate to rehabilitate an impeached witness. *State v. Galloway*, 187 N.W.2d 725, 728 (Iowa 1971); *see State v. Cornell*, 266 N.W.2d 15, 20 (Iowa), *cert. denied*, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978) (holding trial court did not abuse its discretion in allowing the State to elicit from other witnesses the impeached witness's out-of-court statements consistent with his trial testimony).

■ Defendant argues use of the videotape as rebuttal evidence is impermissible because the defense, during its presentation of evidence, never introduced any statements inconsistent with A.J.'s testimony to invoke a need for rebuttal evidence. Defendant contends there is no need for rebuttal evidence when A.J.'s trial testimony was completely consistent with all her prior statements and the defendant never impeached such testimony.

The State urges that the videotape evidence presented is proper rebuttal evidence. Without considering the timing and admissibility issues discussed in section II(c) of this opinion, we agree with the State and find the videotaped interview would be proper rebuttal evidence for two reasons. First, during cross-examination of A.J., defendant raised both express and implied claims that A.J.'s testimony was fabricated and was the result of an improper motive. Second, during his own testimony, defendant made both express and implied charges of improper motive.

Defendant clearly offered such testimony to bolster his claim that, due to the faltering relationship between himself and his daughter, a motive existed for her to lie. As suggested by the State, such testimony clearly impeaches the evidence offered by A.J. that many episodes of indecent contact occurred and such episodes were not made up by A.J. due to any of the reasons suggested by defendant.

Furthermore, our case law supports the State's argument. *See State v. Brotherton*, 384 N.W.2d 375, 380 (Iowa 1986) (holding prior consistent statements of a sexual abuse victim relayed to a social worker were admissible to rebut the implication of improper influence or motive on cross-examination). In addition, commentary supports admitting evidence to rebut defendant's express and implied allegations of improper motive. David F. Binder, *Hearsay Handbook* § 2.12, at 70 (3d ed. 1991) ("The credibility of a witness is impeached when a party suggests that the witness is an unreliable historian. Such suggestion may be made by ... charging or implying that the witness's testimony is the product of conscious fabrication.").

Therefore, we find the State's use of the videotaped "consistent statement" interview was a permissible form of rebuttal testimony.

However, that does not end the enquiry.

■ *c. Effect of the Tome case on our Gardner decision.* Defendant's second argument asks us to conclude that, even if the videotaped interview is otherwise permissible rebuttal evidence, such evidence should be excluded because the prior consistent statement was recorded *after* the motive to fabricate arose. Defendant acknowledges that such a conclusion would require us to overrule our *Gardner* decision. *Gardner*, 490 N.W.2d at 841 (concluding that a prior consistent statement need not have been made *prior* to the existence of a motive to fabricate in order to be admissible under Iowa rule of evidence 801(d)(1)(B)). The State concedes that the alleged motive to fabricate in this case arose *prior* to the interview between Nigh and A.J. Therefore, if we reverse

*Gardner*, we must hold the district court abused its discretion in admitting the videotaped interview.

In *Gardner*, we first addressed the issue of timing of the prior consistent statement and whether the consistent statement must have been made prior to the existence of a motive to fabricate. *Gardner*, 490 N.W.2d at 841. After citing the applicable authorities, we concluded policy weighed in favor of adopting a flexible approach to the admissibility of prior consistent statements:

> [Iowa rule of evidence] 801(d)(1)(B) does not speak to a time sequence, therefore, we agree with the latter approach [holding a time requirement should not be imposed strictly as a rigid per se rule but should be one of several factors in determining the relevance of a prior consistent statement]. We believe that a flexible approach will allow the trial court to determine whether a consistent statement will aid the jury in determining whether the witness told the truth. The court can consider the possibility of inducement to change the inconsistent statement; the corroborative value of the prior consistent statement; and the length of time between the statements.

*Id.*

Defendant contends, citing a recent United States Supreme Court decision, *Tome v. United States*, 513 U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), that we should overrule our decision in *Gardner*.[4] In *Tome*, the Court held that a witness's prior consistent statement is admissible as nonhearsay to rebut a charge of recent improper motive under federal rule of evidence 801(d)(1)(B) *only if* the statement was made before the improper motive to fabricate arose. *Id.* at ——, 115 S.Ct. at 705, 130 L.Ed.2d at 588.[5]

Undoubtedly, *Tome* is contrary to our *Gardner* decision. The Court in *Tome* rejected the balancing test, employed by us in *Gardner* and by other courts, stating a case-by-case approach "creates precise dangers" because such weighing "involves considerable judicial discretion; it reduces predictability; and it enhances the difficulties of trial preparation because parties will have difficulty knowing in advance whether or not particular out-of-court statements will be admitted." *Id.* at ——, 115 S.Ct. at 704–05, 130 L.Ed.2d at 587.

The State, also recognizing the potential impact of the *Tome* decision, urges us to uphold *Gardner*. As argued by the State and acknowledged by defendant, we are not bound in our interpretation of the Iowa rules of evidence by federal courts' interpretations of similar federal rules. *Cf. State v. Sauls*, 356 N.W.2d 516, 518 (Iowa 1984) (stating federal cases interpreting federal rules similar to state rules, while not binding on this court, constitute persuasive authority); *State v. Snodgrass*, 346 N.W.2d 472, 475 n. 2 (Iowa 1984) (stating courts are not bound, when interpreting an Iowa rule of criminal procedure, to federal court interpretations of an analogous federal rule); *State v. Belieu*, 288 N.W.2d 895, 897 (Iowa 1980) (same); *Hubbard v. State*, 163 N.W.2d 904, 909 (Iowa 1969) (stating that although decisions and interpretations of federal courts may be illus-

---

**4.** In fairness to the district court, we note that *Tome* was decided after the sentencing in the present case but prior to the court of appeals decision from which the parties requested further review.

**5.** The facts of *Tome* are similar to the present case. Tome was charged with sexual abuse of his four-year-old daughter. *Id.* at ——, 115 S.Ct. at 699, 130 L.Ed.2d at 579. Defendant cross-examined the complaining witness and attempted to establish she had a motive to fabricate based on her desire to live with her mother after her parents' divorce. *Id.* at ——, 115 S.Ct. at 699, 130 L.Ed.2d at 580. After the defendant's case-in-chief, the trial court permitted the United States to present rebuttal testimony from several witnesses concerning prior, out-of-court state-

ments made by defendant's daughter in which she allegedly described the abuse she had sustained. *Id.* at ——, 115 S.Ct. at 699–700, 130 L.Ed.2d at 580. The prior consistent out-of-court statements did not pre-date the child's alleged motive to fabricate. Defendant was subsequently convicted, sentenced to prison, and appealed his verdict to the Tenth Circuit Court of Appeals. *Id.* at ——, 115 S.Ct. at 700, 130 L.Ed.2d at 580. The Tenth Circuit affirmed the conviction. *United States v. Tome*, 3 F.3d 342, 350–51 (10th Cir.1993), *rev'd*, 513 U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). The Supreme Court reversed the Tenth Circuit and remanded the case for a new trial consistent with the Court's announced bright-line rule regarding the admissibility of prior consistent statements.

trative to state courts construing statutes patterned after those enacted by Congress and entitled to great weight, they are neither conclusive nor compulsory). However, we will give considerable weight to an interpretation of a federal rule after which Iowa has patterned its rule. *Brunner v. Brown*, 480 N.W.2d 33, 35 (Iowa 1992).

Due to the inherent conflict between the United States Supreme Court's interpretation of federal rule of evidence 801(d)(1)(B) in *Tome* and our interpretation of the corresponding Iowa rule in *Gardner*, we choose to reverse *Gardner* and hold, as did the Supreme Court in *Tome*, that a witness's prior consistent statement is admissible as non-hearsay to rebut a charge of recent improper motive under Iowa rule of evidence 801(d)(1)(B) *only if* the statement was made before the alleged improper motive to fabricate arose. We believe the Supreme Court's rationale in *Tome* is sound. Furthermore, we believe adopting *Tome* will allow consistent application of Iowa rule of evidence 801(d)(1)(B) in both Iowa's federal and state courts.

We conclude the videotaped "prior consistent" statement of A.J. repelled, controverted or dispelled evidence elicited by defendant. However, due to our decision to follow *Tome's* bright-line rule regarding admissibility based on timing of the prior consistent statement, we find the district court abused its discretion in admitting the State's videotaped statement as rebuttal evidence. This conclusion moots a sentencing issue raised in the State's application for further review.

III. *Conclusion.* We overrule the portion of our *Gardner* decision inconsistent with the Supreme Court's decision in *Tome*, and, therefore, vacate the court of appeals decision, reverse the district court judgment, and remand for a new trial. Our new interpretation regarding the application of Iowa rule of evidence 801(d)(1)(B) applies to the present case, prospectively to cases pending at the time this decision is filed, and to cases in which the issue resolved herein was preserved. *See State v. Davis*, 525 N.W.2d 837, 841 (Iowa 1994).

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL.**