James **CAROLAN, Individually and as Next Friend of His Children, Brenda L. Carolan, Christine M. Eddy, and Mary Carolan, Appellants,**

v.

**Donal D. HILL, Winn H. Gregory, Medical Arts Clinic, and Jefferson County Hospital, Appellees.**

No. 95–1030.

Supreme Court of Iowa.

Sept. 18, 1996.

Rehearing Denied Oct. 22, 1996.

James P. Hayes, Paul J. McAndrew, Jr. and Steven A. Michalek of Meardon, Sueppel, Downer & Hayes, P.L.C., Iowa City, for appellants.

Randall C. Stravers and Marion H. Pothoven of Pothoven, Blomgren & Stravers, Oskaloosa, for appellees Hill, Gregory and Clinic.

Margaret P. Winegarden and Richard M. Tucker of Phelan, Tucker, Mullen, Bright & Walker, L.L.P., Iowa City, for appellee Hospital.

Richard J. Sapp and Darci L. Frahm of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, Des Moines, for amicus curiae Iowa Medical Society.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

In this medical malpractice action, James Carolan[1] sued Donal D. Hill, D.O., Winn H. Gregory, M.D., Medical Arts Clinic, and Jefferson County Hospital (defendants) for an ulnar nerve injury he allegedly suffered during surgery. We find the district court did

---

1. The plaintiff, James Carolan, brought suit, individually and as parent and next friend of his two children, for loss of parental consortium, along with his wife, Mary, who sued for loss of spousal consortium.

not abuse its discretion in ruling that the peer review records in question were not discoverable and in excluding the rebuttal testimony of one of Carolan's experts. We find the district court did abuse its discretion in refusing to permit a nurse anesthetist to testify as an expert witness. We affirm in part, reverse in part, and remand.

## I. Background Facts and Proceedings.

On August 27, 1991, Carolan underwent surgery at Jefferson County Hospital to treat a severe reflex esophagitis. Dr. Gregory performed the surgery, and Dr. Hill administered the anesthesia. Following the surgery, Carolan began experiencing pain and numbness in his left arm. His arm was still hurting when he was discharged from the hospital on September 1. After numerous return visits to the hospital to have his arm examined, Carolan was diagnosed with an ulnar nerve injury to his left arm. On July 14, 1993, Carolan filed negligence and res ipsa loquitur claims against defendants, alleging the injury was caused by the improper positioning and padding of his arm during the administration of anesthesia during surgery.

During the course of discovery, Carolan learned that Dr. Robert Forbes, one of defendants' experts, had conducted reviews of the hospital's anesthesia department in 1989, 1991, and 1993. On January 6, 1995, Carolan served a subpoena duces tecum on Dr. Forbes, seeking all documents generated by virtue of these contacts. The defendants filed a motion to quash and the matter proceeded to a hearing. On January 9, after an in camera review of the documents, the district court determined they were privileged as peer review documents under Iowa Code section 147.135 (1993) and granted the motion to quash. Carolan subsequently filed a motion to exclude Dr. Forbes' testimony, arguing that if he could not discover the documents which formed the bases of his opinions, the testimony should not be allowed. On January 23, the district court denied the motion, stating that its ruling was subject to review based on Dr. Forbes' testimony at trial.

On January 12, eleven days before trial, the defendants Hill, Gregory, and Medical Arts Clinic filed a motion to exclude one of Carolan's experts, nurse Tafford Oltz, from testifying at trial. They argued that, under Iowa Code section 147.139, a nurse cannot testify as to the standard of care of a physician. The district court agreed and granted the motion to exclude.

The case was tried to a jury beginning on January 23. At the conclusion of defendants' case, Carolan sought to introduce rebuttal witnesses to refute defendants' position that ulnar nerve damage can occur regardless of what padding is done during the surgical procedure. The district court denied the request, holding that the proffered testimony was merely an expansion of Carolan's case-in-chief and not rebuttal.

On February 2, the jury returned a verdict for the defendants. Carolan filed a motion for new trial, which was denied by the district court. He raises three issues on appeal. First, Carolan contends the district court erred in its ruling on the peer review documents and on the motion to exclude Dr. Forbes' testimony. Second, he contends the district court erred in ruling that Oltz could not testify as an expert. Third, Carolan contends the district court erred in refusing to permit him to call one of the rebuttal witnesses.

## II. Scope of Review.

■ Our scope of review is for the correction of errors at law. Iowa R.App.P. 4. In ruling upon motions for new trial, the trial court has broad but not unlimited discretion. Iowa R.App.P. 14(f)(3). Consequently, we will reverse only upon a finding of an abuse of that discretion. *Foggia v. Des Moines Bowl–O–Mat, Inc.*, 543 N.W.2d 889, 891 (Iowa 1996). An abuse of discretion is shown only where such discretion was exercised by the court on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 543 (Iowa 1996).

## III. Peer Review Documents.

Carolan argues the district court improperly determined the requested documents to

be privileged peer review records and erred in overruling his motion to exclude the expert testimony of Dr. Forbes.

The district court is vested with wide discretion in rulings on discovery matters. *Pierce v. Nelson,* 509 N.W.2d 471, 473 (Iowa 1993). Discovery rules are to be liberally construed to effectuate disclosure of all relevant and material information to the parties. *Hutchinson v. Smith Lab., Inc.,* 392 N.W.2d 139, 140–41 (Iowa 1986). A party may defeat discovery by establishing that the material sought is privileged or irrelevant. *AgriVest Partnership v. Central Iowa Prod. Credit Ass'n,* 373 N.W.2d 479, 482 (Iowa 1985). One resisting discovery through assertion of privilege has the burden of showing that a privilege exists and applies. *Hutchinson,* 392 N.W.2d at 141. An asserted privilege is narrowly construed because it is an exception to our rules governing discovery. *Id.*

However, Iowa has a broad statutory privilege for the writings and other records generated by a peer review committee, explicitly set forth in a 1986 amendment to Iowa Code section 147.135 (1985). *Id.* When an asserted privilege is based on a statute, the terms of the statute define the reach of the privilege. *AgriVest,* 373 N.W.2d at 483.

Peer review means "evaluation of professional services rendered by a person licensed to practice a profession." Iowa Code § 147.1(8). Peer review records are defined as "all complaint files, investigation files, reports, and other investigative information relating to licensee discipline or professional competence in the possession of a peer review committee or an employee of a peer review committee." *Id.* § 147.135(2). The statute explains the extent of the privilege:

> Peer review records are privileged and confidential, are not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee and are not admissible in evidence in a judicial or administrative proceeding....

*Id.*

Carolan argues that the statutory privilege of Iowa Code section 147.135(2) is not applicable to Dr. Forbes' reviews because, when reading sections 147.1(8) and 147.135(2) together, "peer review records" is intended to mean those records relating to the discipline or professional competence of a specific licensee. Therefore, Carolan argues, the documents should be discoverable pursuant to Iowa Rule of Civil Procedure 125(a) because the reviews were not related to a specific licensee. We disagree.

Even though Iowa Rule of Civil Procedure 125 allows for broad discovery of the facts known, mental impressions, and opinions held by an expert to be called as a witness at trial, there are limitations. Iowa Rule of Civil Procedure 122(a) limits the scope of discovery to "any matter, *not privileged,* which is relevant to the subject matter involved in the pending action...." (Emphasis added.) This rule requires statutory privileges to be honored.

Further, the narrow reading of the statutes, urged by Carolan, was not intended by the legislature. We have already held that the statutory privilege of Iowa Code section 147.135 is broad. *Hutchinson,* 392 N.W.2d at 141. There are several policy reasons for adopting this broad privilege:

> It allows a physician to consult with peers about his [or her] care and treatment of a particular patient. It also allows critical retrospective analysis of cases to learn better methods of treatment for the future. Similarly, it encourages peers to lodge complaints and initiate disciplinary action against those who are practicing substandard care, without fear of disclosure or retribution.

Thomas A. Finley et al., *Tort Reform and Medical Malpractice: Iowa's Past, Present, and Future,* 36 Drake L.Rev. 669, 676 (1986–87).

Peer review privileges encourage an effective review of medical care. If such records were privileged only when directed at a specific licensee, hospitals would have difficulty conducting reviews of their health care departments. Without the broad protections, physicians would be very reluctant to participate, knowing the information could easily be

revealed in a court of law. We hold that the statutory privilege of Iowa Code section 147.135(2) covers the documents involved in this case. All of the documents requested by Carolan relate to Dr. Forbes' peer review investigation of the hospital's anesthesia department in 1989, 1991, and 1993.

Carolan also argues that the trial judge's in camera review of the documents was inadequate. There is no support in the record to indicate that the trial judge abused his discretion. He examined the records and determined they had no relevance to this action.

Finally, Carolan argues that even if the peer review records are privileged, Dr. Forbes' testimony should be excluded because he relied on those documents in forming his opinion. We disagree. The record reflects that Dr. Forbes' opinions were based on a specific review of Carolan's medical records, his experience as an anesthesiologist, and his review of the medical literature search. There is no evidence to suggest that Dr. Forbes relied on the excluded peer review records while testifying at trial.

### IV. Qualification of Nurse–Anesthetist as Expert Witness.

Carolan's second argument on appeal is that the district court improperly excluded Oltz from testifying as to the standard of care concerning the proper positioning and padding of the arms during the administration of anesthesia during surgery. This dispute focuses on the wording of Iowa Code section 147.139, which provides:

> If the standard of care given by a physician and surgeon licensed pursuant to chapter 148, or osteopathic physician and surgeon licensed pursuant to chapter 150A, or a dentist licensed pursuant to chapter 153, is at issue, the court shall only allow a person to qualify as an expert witness and to testify on the issue of the appropriate standard of care if the person's medical or dental qualifications relate directly to the medical problem or problems at issue and the type of treatment administered in the case.

Carolan contends that the plain language of the statute does not restrict non-physician

medical personnel from testifying as an expert witness and that the rules of statutory construction support his claim. We agree.

Rules of statutory construction are to be applied only when the explicit terms of a statute are ambiguous. *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995). Precise, unambiguous language will be given its plain and rational meaning in light of the subject matter. *Id.* A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute. *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995). Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined. *Id.*

The ultimate goal of statutory construction is to give effect to the intent of the legislature. *Citizens' Aide/Ombudsman v. Miller*, 543 N.W.2d 899, 902 (Iowa 1996). We cannot, under the guise of construction, enlarge or otherwise change the terms of the statute as the legislature adopted it. *Marcus*, 538 N.W.2d at 289. We will not construe a statute in a way that would produce impractical or absurd results, *United Fire & Cas. Co. v. Acker*, 541 N.W.2d 517, 518 (Iowa 1995), and we should not speculate as to the probable legislative intent apart from the wording used in the statute. *State v. Haberer*, 532 N.W.2d 757, 759 (Iowa 1995).

If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

> (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) the common law or former statutory provisions, including laws upon the same or similar subjects, (5) the consequences of a particular construction, (6) the administrative construction of the statute, [and] (7) the preamble or statement of policy.

Iowa Code § 4.6. We are required to interpret the language fairly and sensibly in accordance with the plain meaning of the words used by the legislature. *City of Des Moines v. Civil Serv. Comm'n*, 540 N.W.2d 52, 57 (Iowa 1995).

The key language in the statute is the legislature's use of the word "person." Carolan argues that because the legislature used both "physician" and "person" at different places in the statute, it is clear the legislature recognized that the two words are not the same. Defendants argue that the very purpose of Iowa Code section 147.139 is "to require testimony only from persons who have qualifications equal to the physician or surgeon."

Use of the word "person" is not ambiguous. In our search for legislative intent, we are to be guided by what the legislature actually said, rather than what it should or might have said. Iowa R.App.P. 14(f)(13); *Marcus,* 538 N.W.2d at 289. Iowa Code chapter 4, which addresses the construction of statutes, defines the word "person." *See* Iowa Code § 4.1(20). "Unless otherwise provided by law, *'person'* means *individual,* corporation, limited liability company, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity." *Id.* (emphasis added). We must presume the legislature intended this definition of "person" because it is not defined in Iowa Code chapter 147. If the legislature wanted to restrict expert testimony to physicians and dentists, it easily could have done so.

However, even if use of the word "person" is ambiguous, other rules of statutory construction compel the same conclusion. *See* Iowa Code § 4.6(5) (examine the consequences of a particular construction). If the word "person" is construed only to include physicians, it would contradict the statutory and case law regarding the admissibility of expert testimony. Our case law does not suggest that all non-physician medical persons are prohibited from testifying as expert witnesses in medical malpractice actions.

 We are committed to a liberal rule on admissibility of expert testimony, *Wick v. Henderson,* 485 N.W.2d 645, 648 (Iowa 1992), and the admission of such testimony rests within the sound discretion of the district court. *Tappe v. Iowa Methodist Medical Ctr.,* 477 N.W.2d 396, 402 (Iowa 1991). Iowa Rule of Evidence 702 has "codified Iowa's existing liberal rule on the admission of opin-

ion testimony." *Hutchison v. American Family Mut. Ins. Co.,* 514 N.W.2d 882, 885 (Iowa 1994). The United States Supreme Court reaffirmed this approach in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597–98, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469, 485 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Further, in its comments to rule 702, the advisory committee stated:

> *If* [pursuant to Iowa Rule of Evidence 104(a) ] *the Court is satisfied that the threshold requirements have been met, the witness should be allowed to testify.* All further inquiry regarding the extent of his [or her] qualifications go to the weight that the fact finder can give such testimony under Rule 104(e).

(Emphasis added.)

Although licensing carries a presumption of qualification to testify in a given field, "learning and experience may provide the essential elements of qualification." *Hutchison,* 514 N.W.2d at 886 (quoting *Jones on Evidence* § 14.13, at 619 (6th ed. 1972)). In fact, a trial court may commit an abuse of discretion if it refuses to allow an expert qualified by experience. *Id.* We have stated that "knowledge from experience is every bit as good as that acquired academically." *Id.* at 888 (quoting Hon. Mark McCormick, *Opinion Evidence in Iowa,* 19 Drake L.Rev. 245, 263 (1970)).

Efforts have been made in the past to impose licensure as a requirement for admission of expert testimony. In *Hutchison,* we explained our reasoning for rejecting such restrictions:

> we refuse to impose barriers to expert testimony other than the basic requirements of Iowa rule of evidence 702 and those described by the Supreme Court in *Daubert.* The criteria for qualifications under rule 702—knowledge, skill, experience, training, or education—are too broad

to allow distinctions based on whether or not a proposed expert belongs to a particular profession or has a particular degree.

*Id.* at 887–88.

Under Iowa Code section 147.139, the expert must have qualifications that relate directly to the medical problem at issue and the type of treatment administered. Carolan argues that his expert, nurse Oltz, should have been permitted to testify because his medical qualifications relate directly to the precise issue in the case: the proper positioning and padding of the arms during administration of anesthesia during surgery.

Oltz is well qualified to testify about the standard of care pertaining to the administration of anesthesia. In his twenty-seven years of practice, Oltz has delivered anesthesia to approximately 17,000 patients. Further, in regards to anesthesiology training, both Oltz and Dr. Hill (who administered the anesthesia to Carolan) are considered anesthetists. Even though Dr. Hill is a physician, he is not an anesthesiologist because he does not specialize solely in that field. Because Oltz meets the qualifications of Iowa Rule of Evidence 702 to testify as an expert witness, we find the district court abused its discretion in prohibiting his testimony. The exclusion of Oltz's testimony was prejudicial.

### V. Rebuttal Witness.

Carolan's final argument on appeal is that the district court abused its discretion by prohibiting him from using Dr. Stafford Klein as a rebuttal witness. Rebuttal evidence is that which explains, repels, controverts, or disproves evidence produced by the opposing party. *State v. Johnson,* 539 N.W.2d 160, 163 (Iowa 1995). Evidence that has no direct tendency to do this is inadmissible on rebuttal. *State v. Webb,* 309 N.W.2d 404, 411 (Iowa 1981).

The trial court has considerable discretion in admitting rebuttal evidence, including the discretion to admit evidence that technically could have been offered as part of plaintiff's case-in-chief. *Johnson,* 539 N.W.2d at 163. The trial court's ruling will be disturbed only upon a clear abuse of discretion. *State v. Agent,* 443 N.W.2d 701, 704 (Iowa 1989).

Carolan was offering the testimony of Dr. Klein to refute defendants' position that ulnar nerve damage can occur regardless of what padding is done during the surgical procedure. He argues that this is proper rebuttal evidence and should have been allowed.

Generally, rebuttal evidence is confined to new matters first introduced by the opposing party. *See* 75 Am.Jur.2d *Trial* § 372, at 571–72 (1991). The subject of padding was not a new issue, and had been raised throughout pretrial discussions and depositions.

The fact that testimony might have been useful and usable in the case-in-chief does not necessarily preclude its use in rebuttal. *Blakely v. Bates,* 394 N.W.2d 320, 324 (Iowa 1986). However,

> Rebuttal is not intended to give a party an opportunity to tell his [or her] story twice or to present evidence that was proper in the case in chief. Thus, rebuttal should not be used as a corroboration, reiteration, or repetition of the plaintiff's case in chief. Thus, evidence which is merely cumulative, adding nothing further to the position taken by previous witnesses, which merely bolsters or supplements that already adduced by the plaintiff, is not admissible as rebuttal.

75 Am.Jur.2d *Trial* § 374, at 573 (1991).

Carolan also argues that the rebuttal testimony should have been allowed because defendants' experts relied upon evidence which had become available shortly before trial. This argument is without merit. On November 28, 1994, Carolan's attorney received an article from defendants' attorney concerning nerve injuries suffered while under anesthesia. The article was published in November 1994. Defendants' attorney indicated that defendants' experts would likely refer to the article during their depositions on December 5, 1994.

All parties had this article several days in advance of the deposition and several weeks in advance of the trial. Carolan had adequate opportunity to question defendants' ex-

perts about the article, and he had sufficient time to determine how to handle the article at trial. We conclude the district court did not abuse its discretion in excluding the testimony of Dr. Klein.

### IV. *Summary.*

We hold it was not error for the court to deny Carolan's request to discover peer review documents, to exclude the expert testimony of Dr. Forbes, or to exclude Dr. Klein as a rebuttal witness. It was prejudicial error to exclude Oltz from testifying as an expert witness. Because defendant Jefferson County Hospital was not involved in the motion to exclude Oltz's testimony, its verdict obtained at trial remains intact, and the hospital is not included in or affected by our remand of this case. We reverse and remand for trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except CARTER, J., who dissents without opinion.