# IN THE COURT OF APPEALS OF IOWA

No. 20-1516
Filed December 15, 2021

**TRINA WARD,**
        Plaintiff-Appellant,

vs.

**UNITY HEALTHCARE; a/k/a UNITYPOINT HEALTH-TRINITY MUSCATINE; PRASAD NADKARNI, M.D.; SUNEEL PARVATHAREDDY, M.D.; RAMESH KUMAR, M.D.; AND MANASI NADKARNI, M.D.,**
        Defendants-Appellees.

_____

Appeal from the Iowa District Court for Muscatine County, Henry W. Latham II (motions to strike and exclude) and Stuart P. Werling (summary judgment), Judges.

Trina Ward appeals district court orders granting motions to strike and summary judgment in favor of the defendants. **AFFIRMED.**

Jeff Carter and Zachary C. Priebe of Jeff Carter Law Offices, P.C., Des Moines and Nicholas A. Carda of McEnroe, Gotsdiner, Brewer, Steinbach & Rothman, West Des Moines, for appellant.

Erik P. Bergeland and Aaron J. Redinbaugh of Finley Law Firm, P.C., Des Moines for appellees Prasad Nadkarni, M.D., and Ramesh Kumar, M.D.

James R. Patton, J. Sue Myatt and Jeffrey D. Martens of Bozeman, Neighbour, Patton & Noe, LLP, Moline, Illinois for appellees Unity Healthcare, Suneel Parvathareddy, M.D., and Manasi Nadkarni, M.D.

Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Trina Ward appeals district court orders granting motions to strike and summary judgment in favor of defendants Unity Health Care (Trinity), also known as Unity Point Health–Trinity Muscatine, and Doctors Prasad Nadkarni, Suneel Parvathareddy, Ramesh Kumar, and Manasi Nadkarni.

## I.      Background Facts and Proceedings

Ward was admitted to Trinity Hospital in Muscatine on September 1, 2015. She first reported to the emergency room but was admitted to the hospital with abdominal pain.  Ward underwent surgery on September 5 and then remained at Trinity for post-operative care.  The surgeon, Dr. Hill, was on a short-term contract with Trinity.  Ward was still at the hospital when her pain worsened on September 17.  In the early morning hours of September 18, she reported feeling extreme acute pain in her abdomen.  Over the next couple of hours, Ward was unhappy with the treatment she received at Trinity, and she was transferred to University of Iowa Hospitals and Clinics (UIHC) later that day.  When she arrived at UIHC, doctors determined that Ward had a perforated bowel and was septic.  Her treatment ultimately included emergency procedures and resulted in a loss of a portion of Ward's bowel.

In September 2017, Ward filed suit against Trinity and a number of surgeons, hospitalists, administrators, and nurses.  As the case progressed, some parties, including Dr. Hill, were dismissed.  At the time of the relevant motions, the remaining defendants were Trinity; its administrators and nurses; and Doctors P. Nadkarni, Parvathareddy, Kumar, and M. Nadkarni, all of whom are board-certified as either surgeons or hospitalists.

Ward initially disclosed expert witnesses within the statutory timeframe to support her medical-malpractice claims. Over time, however, she attempted to update the report of Dr. Jeffrey Durgin and designate Dr. Jotesh Chug as a rebuttal witness. Trinity and all of the doctors challenged the second Dr. Durgin report and argued Dr. Chug was not properly classified as a rebuttal witness through successful motions to strike. Trinity and the doctors then filed motions for summary judgment, arguing no issues of material fact remained because Ward could not prove prima facie claims of malpractice. Following a hearing, the district court granted the motions for summary judgment.[1] Ward appeals.

## II.    Standard of Review

"We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion." *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). "[A] trial court has broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Hantsbarger v. Coffin*, 501 N.W2d 501, 505 (Iowa 1993) (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989)). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law. *Ranes*, 778 N.W.2d at 685 (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)).

"We review the grant of summary judgment for correction of errors at law." *Susie v. Family Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 336 (Iowa

---

[1] The district court's order indicates that a hearing was held on September 24, 2020. No transcript of the hearing was provided in our record on appeal.

2020). "We view the facts in the light most favorable to the nonmoving party." *Id.* at 337. Our review focuses of whether the movant has proved there is a genuine issue of material fact. *See* Iowa R. Civ. P. 1.981(3). "An issue of fact is 'material' only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law. An issue is 'genuine' if the evidence in the record is such that a reasonable jury could return a verdict for the nonmoving party." *Cannon v. Bodensteiner Implement Co.*, 903 N.W.2d 322, 327 (Iowa 2017) (altered for readability) (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015)). "If the nonmoving party cannot generate a prima facie case in the summary judgment record, the moving party is entitled to judgment as a matter of law." *Susie*, 942 N.W.2d at 336–37.

## III. Analysis

### A. Motions to Strike

Ward argues the district court erred in granting motions to strike her expert witnesses. She specifically alleges the court erred in excluding a supplemental report from Dr. Durgin and in finding Dr. Chug was not a rebuttal witness.

Expert witnesses in liability cases that involve licensed professionals must be disclosed to the court and opposing parties in compliance with Iowa Code section 668.11 (2017).

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:
> > a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.

> b. The defendant within ninety days of plaintiff's certification.
> 2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

Iowa Code § 668.11(1), (2). Rebuttal experts are excepted from the rule. *Id.* § 668.11(3).

Our supreme court has classified section 668.11 as a "procedural or remedial" provision, meaning it is subject to liberal interpretation. *Hantsbarger*, 501 N.W.2d at 504. It has also found compliance need not be strict, but parties will be held to a standard of substantial compliance. *Id.* "Substantial compliance is 'compliance in respect to the essential matters necessary to assure the reasonable objectives of the statute.'" *Id.* (quoting *Superior/Ideal, Inc. v. Bd. of Rev. of the City of Oskaloosa*, 419 N.W.2d 405, 407 (Iowa 1988)). Our supreme court has stated the purpose of section 668.11 is "to require a plaintiff to have his or her proof prepared at an early stage in the litigation in order that the professional does not have to spend time, effort and expense in defending a frivolous action." *Id.* And yet, we are generally "unwilling to dispose of cases for failure to abide by the rules of discovery" because we prefer "to dispose of cases on the merits." *Id.* Still, the statute allows a court to provide relief to a party who has not complied with the statute by showing good cause. *Id.* at 504–05.

Here, Ward was required to certify her chosen expert and rebuttal expert witnesses by July 5, 2018 and disclose opinions and reports by September 3. Dr. Durgin's identity was disclosed on July 5, but no curriculum vitae was produced. A five-page report was provided on September 4. The report was dated August

24. Dr. Durgin was deposed on April 30, 2019, and approximately one hour into the deposition disclosed the fact that he had written a supplemental report. No defendant was aware of the supplemental report and objections were made. Ward made Dr. Durgin's supplemental report available to opposing counsel during the deposition, and it was noted the report was dated August 24, 2018, the same date as the first report.

During his deposition, Dr. Durgin testified that he drafted the supplemental report "a few months" prior to the deposition.[2] Dr. Durgin indicated that he had telephone conversations with Ward's counsel about the opinions given in the initial report, but he did not receive any new materials between the time of his first report and his second report. The first report alleged four breaches of duties by Dr. Hill, who was dismissed from the lawsuit in January 2019. The supplemental report made seven allegations of breached duties, and for the first time made allegations against other doctors and Trinity administration. The testimony reveals that Dr. Durgin, after drafting the report disclosed on September 4, engaged in another review of the same records, which led to the supplemental report disclosed to Ward's counsel on January 21, 2019.

The supplemental report makes allegations of wrongdoing and involves different doctors and entities from those contained in the first report. While Ward deemed the report "supplemental," it functions as a completely separate statement of Dr. Durgin's new findings. We agree with the district court that Dr. Durgin's supplemental report, disclosed to Ward's counsel four months after the first report,

---

[2] Ward's counsel eventually acknowledged on the record that the supplemental report was provided to them on January 21, 2019.

was not made in compliance with the standards set forth in section 668.11. Furthermore, Ward has made no effort to show good cause for delaying another three months before disclosing the report to defense counsel, who remained unaware of its existence until April 30. We recognize that defense counsel had an opportunity to cross-examine Dr. Durgin, albeit the same day the supplemental report was disclosed, and that trial was eventually postponed. There is still no evidence of good cause to support withholding Dr. Durgin's supplemental report for three months, particularly when it disclosed new opinions and allegations against different defendants. We find nothing clearly untenable or unreasonable with the district court's determination that Ward failed to substantially comply with section 668.11 in failing to timely disclose Dr. Durgin's supplemental report or the court's decision to grant the motion to strike that report. *See id.*

"Rebuttal evidence is that which explains, repels, controverts, or disproves evidence produced by the opposing party. Evidence that has no direct tendency to do this is inadmissible on rebuttal." *Carolan v. Hill*, 553 N.W.2d 882, 889 (Iowa 1996). "Generally, rebuttal evidence is confined to new matters first introduced by the opposing party . . . . The fact that testimony might have been useful and usable in the case-in-chief does not necessarily preclude its use in rebuttal." *Id.* "[E]vidence which is merely cumulative, adding nothing further to the position taken by previous witnesses, which merely bolsters or supplements that already adduced by the plaintiff, is not admissible as rebuttal." *Id.* (quoting 75 Am. Jur. 2d *Trial* § 374, at 573 (1991)).

Ward's counsel first contacted Dr. Chug on November 15, 2018, after depositions of the treating physicians revealed that Ward had been treated by

hospitalists, even though she had previously obtained the medical records that documented treatment by those hospitalists. Dr. Chug sent his report to Ward's counsel on December 3. Ward did not disclose Dr. Chug's identity to the defendants until December 31, and the report was not disclosed until January 9. Although Dr. Chug's opinions reflect those of a hospitalist, not a surgeon, they are directed at the elements of Ward's case-in-chief, not any new evidence or facts raised by the opposing party. Based on our review of the record, there is nothing clearly unreasonable or untenable in the district court's determination that Dr. Chug was not a rebuttal witness or its decision to grant the motion to strike Dr. Chug as an expert witness. *Hantsbarger*, 501 N.W.2d at 504–05.

B.     Motion for Summary Judgment

Ward argues the district court erred in applying the 2017 amendment to Iowa Code section 147.139 and in finding that she failed to designate experts for both hospital administration and the hospitalists, surgeons, and other medical professionals who provided care to her. All defendants challenge error preservation on the statutory-misapplication argument.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "Issues not raised before the district court . . . cannot be raised for the first time on appeal*." Garwick v. Iowa Dep't of Transp.*, 611 N.W.2d 286, 289 (Iowa 2000) (quoting *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997)). The party moving for summary judgment bears the burden to prove it is entitled to that judgment. *Bill Grunder's Sons Constr., Inc. v. Ganzer*, 686 N.W.2d 193, 197 (Iowa 2004). But once

judgment has been entered, "the nonmovant must at least preserve error [on an alleged issue] by filing a motion following entry of judgment, allowing the district court to consider the claim of deficiency." *Id.* at 197–98.

When resisting the motions for summary judgment before the district court, Ward made arguments based on the qualification of her expert, Dr. Kurtz, pursuant to the standard pronounced in Iowa Code section 147.139 after it was amended in 2017, even quoting "same or substantially similar field" from the amended statute. But on appeal, she argues the district court applied the wrong code year and should have applied the version in effect in 2015, the year of the alleged malpractice, in ruling on the motions. Prior to ruling on the motions, Ward never argued to the district court that it should apply the earlier version of the statute and, after its ruling, she never argued that it had applied the wrong code year. The complicating factor is that the district court addressed the 2017 amendment in its ruling. When discussing the qualifications of expert witnesses pursuant to section 147.139, the district court stated: "Though this statute has been updated since the filing of this case, the material provisions of the statute remain unchanged. *Compare* Iowa Code § 147.139 (2020), *with* Iowa Code § 147.139 (2017)."[3] The district court then continued its analysis, and its citations are to the 2020 code.

There is nothing in the record showing that Ward ever raised the argument that the district court applied the wrong code year. In fact, the first time the argument appears is in Ward's brief on appeal. In order to preserve the argument

---

[3] Ward's petition was filed in September 2017, but the injuries giving rise to her cause of action occurred in September 2015. The amendment to section 147.139 applies to causes of action accruing on or after July 1, 2017. *See* 2017 Iowa Acts ch. 107, § 5.

for appeal, it was her duty to take some action asking the district court to consider and rule on her claim the earlier statute was applicable. *Ganzer*, 686 N.W.2d at 197–98. She did not. Consequently, she failed to preserve error on this issue and we will review the case using the code section upon which the district court relied.

We will proceed to Ward's claims that the district court erred in granting the motions for summary judgment because (1) she established a prima facie case of medical malpractice using the expert testimony of Dr. Durgin and Dr. Kurtz and (2) the district court failed to consider the applicability of *Wolbers v. Finley Hospital*, 673 N.W.2d 728 (Iowa 2003). We will not consider any argument related to opinions expressed by Dr. Durgin in his supplemental report. We have already considered the admissibility of those opinions and found them inadmissible. Dr. Durgin's first report and testimony regarding those opinions are the only admissible evidence from him, and they target only Dr. Hill, who was previously dismissed as a party to this case. Thus, we turn to Dr. Kurtz.

In order to prove a prima facie case of medical malpractice, Ward bore the burden to prove "the applicable standard of care, a violation of this standard of care, and a causal relationship between the violation and the harm allegedly suffered by the plaintiff." *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001). In general, expert testimony is necessary to prove each element of a medical malpractice claim. *Id.* The defendants argue there was no expert testimony to prove any element.

The district court found Dr. Kurtz was not qualified to testify against hospital administrators, nursing staff, Dr. Parvathareddy, Dr. M. Nadkarni, Dr. P. Nadkarni, and Dr. Kumar, pursuant to the qualification standards pronounced in Iowa Code

section 147.139. Dr. Parvathareddy and Dr. M. Nadkarni are hospitalists who provide care for patients following admission to the hospital. Dr. Kumar and Dr. P. Nadkarni are general surgeons. In order to qualify as an expert witness, Dr. Kurtz must satisfy one of the following standards:

> 1. The person is licensed to practice in the same or a substantially similar field as the defendant, is in good standing in each state of licensure, and in the five years preceding the act or omission alleged to be negligent, has not had a license in any state revoked or suspended.
> 2. In the five years preceding the act or omission alleged to be negligent, the person actively practiced in the same or a substantially similar field, as the defendant or was a qualified instructor at an accredited university in the same field as the defendant.
> 3. If the defendant is board-certified in a specialty, the person is certified in the same or a substantially similar specialty by a board recognized by the American board of medical specialties, the American osteopathic association, or the council on podiatric medical education.
> 4. a. If the defendant is a licensed physician or osteopathic physician under chapter 148, the person is a physician or osteopathic physician licensed in this state or another state.
> b. If the defendant is a licensed podiatric physician under chapter 149, the person is a physician, osteopathic physician, or podiatric physician licensed in this state or another state.

Iowa Code § 147.139 (2020).

Dr. Kurtz testified in his deposition that he is an emergency medicine physician and was board-certified in internal medicine until 2007. He has not reapplied for certification in internal medicine since that time. Dr. Kurtz was also a hospitalist but has not engaged in that practice since 2004. At no time has Dr. Kurtz ever been board-certified in radiology. Dr. Kurtz has been certified in emergency medicine since 1998. He described his role as an emergency physician is to "stratify patients in terms of the acuity of their presentation, to take care of critical cases first, to make dispositions with regard to admission versus

discharge, depending on our best estimate of the patient's condition at that present time." Dr. Kurtz stated that a bowel perforation "is a common entity in emergency medicine, and [he has] seen many cases of such presentations over the course of the past 20 years or so that [he has] been [a] practicing emergency physician." Dr. Kurtz also stated that he would not offer any opinions on the standard of care against any surgeon or hospitalist in this case.

Our review of the record reveals that Dr. Kurtz never mentioned any training or certification in hospital administration, nursing, or radiology. Although he was, at one point, board-certified in internal medicine, at the time of Ward's treatment in 2015, Dr. Kurtz had not been certified in the previous eight years. And even though he had a prior hospitalist practice, Dr. Kurtz had not engaged in that practice in more than a decade. Dr. Kurtz was also explicit that he had no opinion against any surgeon or hospitalist. And when asked to describe his practice in emergency medical care, Dr. Kurtz described engaging in triage work and then determining which patients would need to remain hospitalized for continued care. He said nothing about being involved in what that continuing medical care would be. Accordingly, we agree with the district court that Dr. Kurtz was not qualified to provide expert testimony about the standard of care or breach against hospital administration, nurses, radiologists, surgeons, or hospitalists. *See id.*

Furthermore, Ward's argument based on *Wolbers* required her to prove a prima facie case of medical malpractice against one of the doctor defendants to be able to assert a claim of vicarious liability against the hospital. 673 N.W.2d at 733–34 (permitting the vicarious-liability claim because of the hospital's relationship to its emergency-response staff). While the relationship between the

hospital and its employees or emergency-response staff may mirror the facts of *Wolbers*, no prima facie case of malpractice has been established and the vicarious-liability claim must fail.

**IV.     Conclusion**

On our review of the record, we find nothing clearly unreasonable or untenable with the district court's orders granting the motions to strike the supplemental report of Dr. Durgin and Dr. Chug as a rebuttal witness. No qualified expert witnesses remained to testify on Ward's behalf. Viewing all of the remaining evidence in the light most favorable to the nonmoving party, Ward did not present sufficient evidence to prove a prima facie case of medical malpractice against any defendant. Finally, because no prima facie case of medical malpractice was made, the vicarious-liability claim must also fail.

**AFFIRMED.**