# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4061

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| James Charles Poe, III, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 12, 2005
Filed:  November 15, 2005

_____

Before ARNOLD, BOWMAN, and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

James Charles Poe III was convicted of conspiracy to possess counterfeit checks and of possession of implements for making counterfeit checks, in violation of 18 U.S.C. § 513(a), (b) (2000).  Poe contends his conviction must be vacated because the District Court[1] permitted a codefendant, Kendrick Bankhead, to testify against Poe despite an alleged conflict of interest of Bankhead's defense counsel, who had represented Poe in an unrelated state criminal case six years before this case. Agreeing with the District Court that no conflict of interest harmed Poe, we affirm.

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

I.

On March 11, 2003, a federal grand jury indicted Bankhead and Mario Thurman for conspiracy to make and possess counterfeit checks. The indictment also listed two counterfeiting counts against Bankhead and seven counterfeiting counts against Thurman. Attorney John Stratford represented Bankhead. With Stratford's assistance, Bankhead entered into a plea agreement with the government on May 6, 2003. Under the plea agreement, Bankhead agreed to plead guilty to the conspiracy charge in exchange for the dismissal of the other two counts. Bankhead also agreed to testify as a government witness as needed. On June 3, 2003, Bankhead pleaded guilty to the conspiracy charge.[2] On August 14, 2003, the District Court entered judgment against Bankhead and sentenced him to twenty-one months' imprisonment.

On May 7, 2003, the grand jury issued a superseding indictment, adding Poe as a member of the Bankhead-Thurman conspiracy to make and possess counterfeit checks. The superseding indictment also charged Poe with possession of implements for making counterfeit checks. On July 1, 2003, Poe made his initial appearance. Herbert Wright was appointed to represent Poe, but the attorney-client relationship deteriorated and Wright moved to withdraw from the representation.

On November 13, 2003, the District Court held a hearing on Wright's motion to withdraw. Before the hearing, Stratford notified the government that he had represented Poe in a state criminal case years before he began his representation of Bankhead in this case. At the beginning of the hearing and at the government's urging, the District Court addressed the potential conflict of interest involved in Stratford's representation of Bankhead, Poe's codefendant in this case. Stratford informed the court that he had represented Poe "six or seven years ago" in a state

---

[2]Though it is not relevant to this appeal, for the sake of completeness we note that Thurman later also pleaded guilty to the conspiracy charge.

court "forgery case that's pretty unrelated to this type of case." Tr. of Hearing at 3:19–22 (Nov. 13, 2003). Stratford added, "I don't really know anything [that] would have hurt Mr. Poe." Id. at 3:24–25. When asked when he began his representation of Bankhead, Stratford replied, "[S]ix, seven, eight months, I think, before Mr. Poe was even indicted." Id. at 4:3–4. Based on this information, the District Court stated that Stratford "had absolutely no conflict for quite some time, because [he was] representing Mr. Bankhead when Mr. Poe was not even a part of this case." Id. at 5:4–7. The District Court then asked Stratford whether he was "going to have anything more to do with this case now that we've already sentenced your client, Mr. Bankhead." Id. at 5:15–17. Stratford responded, "No." Id. at 5:18.

When asked about objections, Wright replied, "I can't form any objection of Mr. Stratford. . . . It appears that his involvement with—with Mr. Bankhead was resolved prior to my client, Mr. Poe, coming into the picture. . . . And as long as he's not going to be providing any information that—that—based on his previous representation of Mr. Poe to the United States, I see no problem." Id. at 5:23–6:7. Recognizing that Stratford's prior representation of Poe, his current representation of Bankhead, and Poe's late addition to the conspiracy charge created "an awkward situation," the District Court nonetheless concluded there was no problem "because of the time involved and because the offenses are apparently not connected." Id. at 6:17–20. After the hearing, the District Court granted Wright's motion to withdraw.

Jeffrey Rosenzweig was then appointed to represent Poe. From May 17 to 19, 2004, Poe's charges were tried to a jury. On May 18, Rosenzweig contended Stratford's prior representation of Poe resulted in a conflict of interest when Stratford negotiated a plea agreement for Bankhead in this case. Rosenzweig argued that the proper remedy for the conflict of interest was to prohibit Bankhead from testifying against Poe. Rosenzweig presented evidence that Poe, while represented by Stratford, pled nolo contendere in the state court case on April 27, 1998. The District Court once again held that no conflict of interest prohibited Bankhead from testifying

against Poe, explaining that Poe's state court conviction was six years earlier and none of the parties involved in that case (other than Poe) were involved in this case. The court allowed Rosenzweig to question Stratford, however, to determine whether his prior representation of Poe benefitted Bankhead in this case.

The District Court particularly was concerned with admitting evidence against Poe that arose out of Stratford's representation of him in 1998. See Fed. R. Evid. 404(b) (discussing the admissibility of evidence of other crimes, wrongs, or acts). Thus, Stratford was asked whether he had discussed with Bankhead anything from Poe's 1998 case. Stratford responded, "No. And really the only thing I remember about Mr. Poe's [1998] case is that he came to me later trying to get his record expunged, which made me think even more that he wasn't going to get in any more trouble." Trial Tr. at 305:23–306:1 (May 18, 2004).

The District Court then explained that at the time of the November 2003 hearing, the court had been focused only on the fact that Bankhead had already been found guilty and sentenced. The court admitted that it was not then focused on Bankhead's introducing Rule 404(b) evidence about Poe's 1998 conviction while being represented by Stratford. Although the District Court still concluded that no actual conflict of interest existed, the court stated it was inclined to require the government to withdraw the Rule 404(b) evidence or not to allow Bankhead to testify against Poe: "It seems to me that if Mr. Stratford's client, Mr. Bankhead, is testifying against Mr. Poe in this case, and also the government is using against Mr. Poe a conviction of record in which Mr. Stratford represented Poe, that just might be too much." Id. at 308:9–13. Stratford again was asked whether he provided Bankhead with any information from his representation of Poe that could be used in this case. Stratford responded that he absolutely had no such information.

Later that afternoon, the government asked to revisit the issue of Bankhead's testimony against Poe. The District Court noticeably was concerned that "Stratford

is put in an awkward position of having his client Bankhead testify against former client Poe, and at the same time former client Poe's conviction at the time of Stratford's representation is in evidence." Id. at 401:17–21. Arguing that Stratford testified he gave no privileged information to the government or to Bankhead, the government asked the District Court to allow Bankhead to testify that he gave counterfeit checks to certain individuals including Poe. Refusing to decide the issue at the time, the court asked counsel to return the next morning with authority on the conflict-of-interest issue, noting, "I don't have any authority on this conflict." Id. at 409:4.

The next day, the District Court allowed the government to call Bankhead as a witness, but only allowed him to testify that he supplied Poe with counterfeit checks in 2002. The jury heard no evidence about Poe's 1998 state court conviction. But the jury heard evidence about the conduct underlying the 1998 state court conviction, because the government introduced evidence regarding a federal conviction Poe had in 1998 arising out of the same conduct. Stratford did not represent Poe in the 1998 federal case.

The jury convicted Poe of both counts. On December 2, 2004, the District Court sentenced Poe to concurrent sentences of sixty months' imprisonment on the conspiracy charge and seventy-one months' imprisonment on the possession charge. On appeal, Poe contends his conviction must be vacated because the District Court erroneously allowed Bankhead to testify against Poe despite Stratford's conflict of interest in representing Bankhead.

## II.

Recognizing this case "presents an unusual variation on the issue of attorney conflict of interest and the ramifications which derive from the conflict," Poe asserts that the relevant legal questions are "whether there is an actionable conflict of interest

and whether Poe was prejudiced by the presentation of Bankhead['s] testimony in this format."  Poe's Brief at 11, 12.  To answer these questions in the affirmative, Poe invokes the Sixth Amendment right to the effective assistance of counsel.  Relying on Holloway v. Arkansas, 435 U.S. 475 (1978), Poe maintains "that the requirement of joint representation over timely objection causes an actual conflict necessitating automatic reversal of conviction, since prejudice is presumed."  Poe's Brief at 13.

The problem with Poe's theory is this case does not involve, and has never involved, joint representation of criminal defendants.  Thus, the application of the Sixth Amendment right to effective assistance of counsel entails the pounding of a square peg into a round hole.  See, e.g., Page v. Ark. Dep't of Corr., 49 Fed. Appx. 663, 665 (8th Cir. 2002) (unpublished per curiam) (explaining that the Sixth Amendment right to conflict-free representation "is held by criminal defendants objecting to their own attorneys"); English v. United States, 620 F.2d 150, 151 (7th Cir.) (per curiam) (holding that defendant could not raise an ineffective-assistance-of-counsel claim against former attorney, who represented defendant's codefendant, but noting that the former attorney "had a duty to refrain from taking any action adverse to [the defendant's] interests in a matter in which he had represented [the defendant]") (citation and quotation omitted), cert. denied, 449 U.S. 859 (1980).  Stratford did not represent Poe in this case.  Poe was represented by Wright and then Rosenzweig.  And Poe does not claim Rosenzweig provided ineffective assistance.

Nevertheless, we indulge Poe's invitation to apply conflict-of-interest principles developed in Sixth Amendment cases, recognizing that the District Court repeatedly determined that Stratford's representation of Bankhead did not present a conflict of interest.  We review this no-conflict determination under an abuse-of-discretion standard.  United States v. Haren, 952 F.2d 190, 195 (8th Cir. 1991).[3]  We

---

[3]Had Poe moved to disqualify Stratford from representing Bankhead based on a conflict of interest, as opposed to moving to exclude Bankhead's testimony, our

review the District Court's factual findings for clear error. United States v. Acty, 77 F.3d 1054, 1057 (8th Cir.), cert. denied, 519 U.S. 872 (1996).

The Sixth Amendment provides a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Because this right means little if the assistance is ineffective, the right also encompasses the right to the effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 685–86 (1984). To guarantee the effective assistance of counsel, a criminal defendant enjoys the right to be represented by counsel free from any conflicts of interest. Wood v. Georgia, 450 U.S. 261, 271 (1981). In joint representation situations, where codefendants actually are represented by the same counsel, Rule 44(c)(2) of the Federal Rules of Criminal Procedure requires district courts to protect a defendant's right to the effective assistance of counsel: "The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."

Poe's misapplication of Sixth Amendment principles originates from his misplaced reliance on Holloway. In Holloway, a single defense attorney was appointed to represent three defendants charged with robbery and rape. 435 U.S. at 477. When the defense attorney moved for the appointment of separate counsel for each defendant because the attorney had received confidential information from them, the trial court refused to appoint separate counsel. Id. at 477–78. A jury convicted the defendants of all counts. Given these circumstances, the Supreme Court applied an earlier case's holding "that whenever a trial court improperly requires joint

_____

standard of review would be the same, i.e., we review for an abuse of discretion the denial of a defendant's motion to disqualify another attorney. See United States v. Kehoe, 310 F.3d 579, 590 (8th Cir. 2002), cert. denied, 538 U.S. 1048 (2003).

representation over timely objection reversal is automatic." Id. at 488 (citing Glasser v. United States, 315 U.S. 60, 75–76 (1942)). The rationale for such a holding is that the "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." Id. at 489–90. Later, the Supreme Court stated that Holloway "create[d] an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." Mickens v. Taylor, 535 U.S. 162, 168 (2002).

An obvious dissimilarity between Poe's case and Holloway is that Poe's attorney represented only Poe, while a single attorney was forced to represent all three defendants in Holloway. Even assuming Stratford somehow represented Poe, the most critical dissimilarity is that the District Court in this case specifically found that no conflict of interest existed. To overcome the District Court's no-conflict finding, Poe must show that defense counsel "actively represented conflicting interests" that "actually affected the adequacy of [the] representation." Cuyler v. Sullivan, 446 U.S. 335, 349–50 (1980); see also Brien v. United States, 695 F.2d 10, 15 (1st Cir. 1982) (stating that "the conflict must be real, not some attenuated hypothesis having little consequence to the adequacy of representation").

We conclude that the District Court did not abuse its discretion in determining that no conflict of interest existed in this case. The District Court properly considered Poe's objections to Stratford's representation of Bankhead, specifically considering the potential conflicts of interest. In doing so, the District Court made two important findings. First, the District Court found that Stratford's representation of Bankhead effectively was completed before Poe was involved in the case. That finding is not clearly erroneous. It is undisputed that Stratford began his representation of Bankhead long before Poe was even indicted. Indeed, Stratford negotiated Bankhead's plea agreement before the grand jury indicted Poe. Poe made his initial appearance in this case nearly a month after Bankhead pleaded guilty. The District Court sentenced Bankhead nearly three months before the government raised the

conflict-of-interest issue. Thus, Stratford's representation of Bankhead essentially was concluded before Poe's case even began, just as Stratford testified.

The District Court's second finding is even more important. Specifically, the District Court found that Bankhead and the government possessed absolutely no information from Stratford's representation of Poe in 1998 that could prejudice Poe in this case. This second finding, like the first, is not clearly erroneous. Over the course of two interrogations, Stratford swore that he did not know any confidential information about Poe that would assist Bankhead or prejudice Poe in this case. He further testified that he did not provide any information gained from representing Poe in 1998 to Bankhead or to the government. Finally, Bankhead's testimony did not even remotely implicate the events underlying Stratford's representation of Poe. Regardless of the identity of Bankhead's attorney, Bankhead's testimony went directly to the events in 2002 dealing with counterfeit checks. Nothing from Poe's 1998 state case found its way into Bankhead's testimony. Indeed, not a single reference to Poe's 1998 state court conviction was made during the trial.

Two additional considerations also support our conclusion that the District Court did not abuse its discretion in finding that no conflict of interest arose out of Stratford's prior representation of Poe. First, we recognize that criminal defense attorneys occupy the best position from which to make the initial determination on whether a conflict of interest exists. Holloway, 435 U.S. at 485; Haren, 952 F.2d at 195 ("A district court may give substantial weight to defense counsel's representations regarding conflicts of interest."). Stratford testified that he possessed no information from his prior representation of Poe that could assist either the government or Bankhead in this case. No evidence detracts from Stratford's testimony. Second, the District Court correctly played its role in ferreting out the potential conflict of interest. See Fed. R. Crim. P. 44(c)(2) (implying that a district court need not take protective measures when "there is good cause to believe that no conflict of interest is likely to arise"). Given the District Court's finding that no

conflict of interest existed, we would be hard-pressed to insert ourselves into this case at this juncture based on this record.  See, e.g., Smith v. Bordenkircher, 671 F.2d 986, 986–87 (6th Cir.) (per curiam) (holding that "a lawyer representing two or more criminal defendants in a state trial [was not required to] withdraw as counsel for remaining defendants because of potential conflict of interest when one co-defendant turn[ed] state's evidence" because the district court's finding that no actual conflict of interest existed was not clearly erroneous), cert. denied, 459 U.S. 848 (1982).

In sum, we reject Poe's invitation to reverse his conviction by applying the Sixth Amendment principles enunciated in Holloway.  More to the point, Poe has cited no authority supporting his theory that Bankhead's testimony must be excluded based on Poe's allegation that Stratford labored under a conflict of interest.  Indeed, his argument relies solely on Sixth Amendment cases.  Even if Poe had relied on the Arkansas Rules of Professional Conduct in asserting his conflict-of-interest theory, we still would not reverse the District Court's finding that this case did not present a conflict of interest.

To the extent rules on professional ethics are enlightening on the propriety of the District Court's no-conflict finding, we consult an attorney's duty to former clients under Arkansas's Rules of Professional Conduct.  Rule 1.9, which governs conflicts of interests involving former clients, states, "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Ark. Rules of Prof'l Conduct R. 1.9(a) (1990), revised by, In re Ark. Bar Ass'n—Petition to Revise the Ark. Rules of Prof'l Conduct, No. 03-1049 (Ark. March 3, 2005) (making minor changes to Rule 1.9).  The Arkansas Supreme Court considers matters to be substantially related for purposes of Rule 1.9 "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior

representation would materially advance the client's position in the subsequent matter." Id. cmt. n.3 (2005). Similarly, Rule 1.9(c) forbids an attorney from divulging a former client's confidences even after the representation ends.

As outlined above, Stratford represented Poe in an unrelated state case six years before this federal case. Stratford has no memory of any information from his representation of Poe, and he did not provide any information to the government or to Bankhead that was used against Poe. Bankhead's testimony related solely to the crime for which Poe was currently charged and did not reference or implicate anything from the 1998 state court conviction. We conclude that (1) the 1998 state case and this federal case are unrelated and (2) the District Court did not err in finding that Stratford did not divulge any confidential information from the 1998 case that assisted Bankhead or prejudiced Poe.

We appreciate that it may be discomforting to know that your former attorney had represented a codefendant who may now testify against you. However, this case did not develop in a way that afforded the District Court an opportunity to address the conflict-of-interest issue until after Stratford effectively concluded his representation of Bankhead. When the government raised the potential conflict of interest, the District Court properly asked whether a conflict of interest existed and held hearings to deduce what Stratford knew and what he may have divulged to Bankhead. After performing its duty to consider the conflict-of-interest issue, the District Court rightly concluded that no conflict of interest existed. Bankhead's testimony buttressed the District Court's finding as Bankhead did not testify about anything from the 1998 state case.

Finally, we note that even if Stratford had labored under a conflict of interest, we know of no authority requiring the District Court to exclude Bankhead's testimony because no evidence gained from Stratford's prior representation of Poe was

-11-

presented to the jury. Instead, Bankhead offered only direct evidence of Poe's current criminal conduct.

## III.

For the reasons stated, Poe's challenge to his conviction is rejected and his conviction is affirmed.

_____