# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1442

_____

United States of America

*Plaintiff - Appellee*

v.

Jeraldon Green

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: November 16, 2012
Filed: December 11, 2012

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Jeraldon Green of being a felon in possession of a firearm. Green appeals, alleging the district court[1] erred in allowing a trial witness, Daniel

_____

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

Herrod, to be advised by an attorney who had previously represented Green in the early stages of the case. We affirm.

## I.    BACKGROUND

On May 17, 2011, officers approached Green, a convicted felon, to conduct a field interview. Green successfully fled from the officers. While in pursuit, the officers saw what appeared to be a firearm in Green's back waistband. On May 18, 2011, officers went to a neighborhood where officers had been told Green might be. Officers observed Green sitting on the front stoop of a house and saw him throw a large, black, metal object through the open front door. Officers took Green into custody. Officers then searched the residence with permission of the homeowner and found a loaded 9 mm Glock 19 firearm with a 30 round magazine under a chair near the front door. Officers also found two other firearms inside the residence. Herrod, the homeowner's son, was home at the time of Green's arrest.

On May 19, 2011, the government filed a criminal complaint against Green. On May 26, 2011, a grand jury charged Green with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Assistant Federal Public Defender Sean Vicente entered an appearance on Green's behalf on May 25, 2011. Vicente filed pretrial motions and appeared with Green at a hearing. On August 16, 2011, Green retained private counsel, and Vicente withdrew as Green's attorney of record.

The district court held a pretrial conference on November 16, 2011. During this hearing, the government suggested some of Green's witnesses may need counsel if any intended to testify that they possessed one or more of the firearms at issue in the case. Green's attorney stated he anticipated a witness would testify the Glock 19, for which Green was being charged, belonged to the witness. The district court directed Green's attorney to inform his witnesses they should seek advice from counsel before testifying and stated the district court would appoint an attorney to standby.

At trial, the district court asked the Federal Public Defender to have an attorney available, and Vicente responded. Vicente spoke to Green's witness, Herrod, before Herrod testified. The district court directed the attorneys to question Herrod outside the presence of the jury to determine whether Herrod intended to invoke his Fifth Amendment privilege. Herrod answered most of the attorneys' questions, but also indicated Vicente told him to assert his privilege against self-incrimination. Green then called Herrod as a witness.

Herrod testified he did not see Green with a firearm on the day of Green's arrest and he had never seen Green with a firearm. Herrod also testified he did not see the officers remove any guns from the house on the day of Green's arrest. When the government asked Herrod whether he was aware police found a revolver in Herrod's bedroom, he responded, "I plead the Fifth, sir." When the government asked Herrod whether he was aware of any of the firearms seized from his house, Herrod again responded, "I plead the Fifth, sir." The prosecutor then asked Herrod:

Q. Have you ever possessed any of these firearms?

A. No, sir, I haven't.

Q. Do you own any of these firearms that I just showed you?

A. No, sir.

Q. You [sic] never seen it before, is that what you're saying?

A. I plead the Fifth.

On November 22, 2011, the jury convicted Green. At sentencing, Green personally said he felt there was a conflict of interest during the trial because Vicente represented Herrod despite knowing "all about" Green's case. The district court acknowledged Green's argument and then sentenced Green to 60 months

imprisonment. Green appeals, contending the district court abused its discretion in failing to recognize and remedy Vicente's conflict of interest.

## II.    DISCUSSION

Green did not object at trial regarding Vicente's alleged conflict of interest. "Errors not properly preserved are reviewed only for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure, as construed in [United States v.] Olano[, 507 U.S. 725, 731 (1993)] and its progeny." United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005).

> To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011). "Plain error review permits reversal only if the error was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice." United States v. Gavin, 583 F.3d 542, 546 (8th Cir. 2009) (quoting United States v. Weaver, 554 F.3d 718, 722 (8th Cir. 2009)) (internal quotation marks omitted).

This court has previously stated that prejudice is presumed where the district court failed to inquire into a known conflict of interest, and reversal is automatic regardless of the nature of the conflict. See Caban v. United States, 281 F.3d 778, 781 (8th Cir. 2002). Because Green maintains the per se rule of reversal applies and relies on Sixth Amendment cases, we assume Green is arguing a violation of his Sixth Amendment right to effective assistance of counsel.

Green incorrectly asserts the per se rule of reversal applies to this case. That per se rule applies where the trial court fails to inquire regarding a possible conflict

of interest related to the attorney representing the defendant. See id. Green does not allege Vicente had a conflict of interest when Vicente represented Green before trial, nor that the attorney who represented Green at trial had any conflict of interest. See United States v. Poe, 428 F.3d 1119, 1122-23 (8th Cir. 2005) (indicating a similar contention "entail[ed] the pounding of a square peg into a round hole").

Green bases his argument on what he perceives to be a violation of the Rules of Professional Conduct. The District Court for the Eastern District of Missouri has adopted the Rules of Professional Conduct promulgated by the Supreme Court of Missouri. E.D. Mo. Local R. 83-12.02. Under "Duties to Former Clients," spelled out in Missouri Supreme Court Rule 4-1.9(a):

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing.

Green asserts on appeal that Vicente's representation of Herrod violated this rule because Herrod's interest, in not facing criminal prosecution for illegally possessing the gun for which Green was charged, was materially adverse to Green's interest.

While it may have been a better practice to have Herrod advised by an attorney who had never represented Green, such error, if it is one, is neither clear nor obvious under current law. The district court did not plainly abuse its discretion.

Green also failed to demonstrate he was in any material way prejudiced by Vicente's representation of Herrod. The district court appointed an attorney to advise the witness in this case because the witness's testimony could potentially subject him to criminal prosecution and the witness needed to be informed of his constitutional privilege not to self-incriminate. Green does not suggest a different attorney

appointed in Vicente's place would have advised Herrod any differently. Herrod testified on Green's behalf, despite the advice he received from his allegedly conflicted counsel. Although Herrod may not have testified precisely as Green expected, Herrod did not invoke his Fifth Amendment privilege when asked whether he ever possessed or owned the firearms at issue. Herrod also testified he did not see Green with the subject firearms and he had never seen Green with a firearm. Green has failed to demonstrate any error affected his substantial rights or affected the fairness, integrity, or public reputation of the judicial proceeding.

## III.   CONCLUSION

Not finding plain error, we affirm.

_____