# IN THE COURT OF APPEALS OF IOWA

No. 16-2048
Amended January 25, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEROMIE ALAN KRAMER,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Carroll County, Gary L. McMinimee,

Judge.


        The defendant appeals from his convictions for sexual abuse in the third

degree and lascivious acts with a child.  **AFFIRMED.**


        Angela Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines, for

appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Jeromie Kramer appeals from his convictions for sexual abuse in the third degree and lascivious acts with a child following a bench trial. He raises a number of arguments on appeal, specifically: 1) an actual conflict of interest with the victim's guardian ad litem resulted in an unfair trial, (2) the State did not present sufficient evidence of either "touching" or any "sex act," (3) the trial court's written findings included an incorrect statement that the victim had no inconsistencies in her story and no motive to fabricate allegations, (4) the trial court's decision not to afford weight to pages from the victim's journal was clear error; (5) the trial court erred by granting the guardian ad litem's motion for a protective order preventing him from taking the victim's deposition again after the trial information was amended to add felony charges, and (6) the trial court erred by admitting parts of the victim's deposition into evidence as prior consistent statements.

**I. Background Facts and Proceedings.**

In December 2015, the State charged Kramer by trial information with indecent contact with a child. It was alleged the conduct occurred in December 2014, when P.W.—the complaining witness—was twelve years old and staying at Kramer's home.

The next day, the county attorney filed a motion to have a guardian ad litem (GAL) appointed. The motion requested the attorney by name, stating the attorney "has agreed to provide said representation." The district court granted the motion.

In April 2016, Kramer deposed P.W.

In May, the State amended the charges filed against Kramer to sexual abuse in the third degree[1] and lascivious acts with a child,[2] both class "C" felonies.

In June, the GAL filed a motion asking the court to "issue a protective order to bar the defendant from deposing the child victim again" because "[f]urther depositions of the child are unnecessary and abusive to the child" and "[a]ny amendments to the original trial information . . . stem from the same series of events that were the basis for the questions by counsel for defendant."

At a hearing on the motion, Kramer orally resisted the motion, claiming he was entitled to a second deposition because of the amended and substituted trial information. The court noted that the elements of the original charge and the later charges were different but that "all are based on the same conduct and incident, " and "it is not apparent, . . . after reading the deposition, what additional information defense counsel could learn about the incident by asking additional questions." The court granted the GAL's motion, which had been joined by the prosecutor, but further elaborated, "[T]his order is without prejudice to Defendant filing an application for a further deposition of the child victim specifying his intended area(s) of inquiry and why the current deposition is not sufficient in those regards." Kramer never filed the responsive application.

The criminal case was tried to the bench in September. At trial, P.W. testified about a specific instance when she was living in Kramer's home in December 2014, where she was sitting on the couch with Kramer and he was massaging her feet. At some point during the massage, she fell asleep. She

---

[1] Iowa Code § 709.4 (2014).
[2] Iowa Code § 709.8.

awoke some time later to P.W. using her feet to rub his penis through his sweatpants. P.W. fell back asleep. Later, she woke up and sat up, removing her feet from Kramer's hands and placing them on the floor. She testified Kramer then began giving her a hand massage with his hands but ultimately moved her hand to his genitals and then proceeded to use her hand to massage his genitals in the same manner he used her feet and toes.

Kramer testified in his own defense. He testified it was not uncommon for him to give P.W. a hand or foot massage, but he denied ever purposefully using P.W.'s hand or feet to touch or massage his genitals. He testified there was at least one instance where he was giving her a hand massage and they both fell asleep, with her hand then falling into the area of his genitals. He testified similarly to giving her a foot massage and ultimately having "one or both of them fall asleep" with her foot then falling onto his stomach then "slid[ing] down if she's moving around."

Two police officers who conducted an interview with Kramer testified that he knew of the incident in question before they began interviewing him. He denied ever forcing her hand or foot to his genitals but agreed it was possible her hand or feet had touched his penis through his clothes. When he was asked if he had an erection, Kramer qualified that it was not a "full-blown erection" and compared it to "morning wood." At trial, Kramer denied ever telling the officers he had any erection of any sort.

On October 13, the court found Kramer guilty as charged. In reaching its determination, the court noted:

Although the 14 year old witness was interviewed by a forensic interview, deposed by defense counsel and gave testimony at trial, there is no evidence that she made inconsistent statements regarding any material issue. She also appeared to have nothing to gain or any other motivation to fabricate her testimony. Finally, her testimony was reasonable and consistent with surrounding circumstances.

In November, Kramer filed a motion for new trial, informing the court for the first time that the GAL for the minor child had previously represented Kramer in an adoption proceeding in 2014, the same year in which the child resided with Kramer and his wife. Kramer maintained the GAL's representation of P.W. "constituted a conflict." At the hearing on the motion, Kramer argued "that the Defendant has a right to an impartial trial and we almost have to assume that there was prejudice." The GAL testified, "The Defendant and his wife had been approved by [the Iowa Department of Human Services (DHS)] to adopt a child that was in their care. So I was contacted by DHS and the family to prepare the paperwork." She later elaborated:

> In a DHS adoption, DHS has custody of the child so they—the DHS manager, supervisor will sign a release, a consent to the adoption. So it's not a matter of what I think of the adoption. Petitioners—the only option for that adoption is with the Petitioners who have been approved by DHS.

When asked directly if she had provided the victim with any privileged information she obtained from Kramer, the GAL said, "No." When asked if she "ever revealed any information to [the county attorney] about this adoption proceeding involving the defendant," the GAL testified:

> Not that I can recall right offhand. Typically, if I am ever appointed guardian a[d] litem in a criminal case, there's not much contact between myself and the County Attorney's Office other than for things such as scheduling, you know, more routine procedural

matters like that. There is rarely ever, if any, substantive information shared.

The county attorney asked again if the GAL could "think of any substantive information that you ever provided the County Attorney's Office," and she replied, "No, not—there wasn't any to provide and I don't—I didn't provide any."

She also testified that Kramer's trial counsel—Kramer had obtained different counsel after the verdict was entered—had been aware of her representation of Kramer in the earlier case. During the hearing, Kramer's counsel asked the GAL why she had not "reveal[ed] to the court early on that [she] had represented [Kramer]," and the GAL responded:

> Those were substantially different matters and that DHS adoption, I have very little actual contact with the family who is adopting. My payment comes through DHS. All the information comes through DHS. The DHS adoptions are substantially different than a private adoption matter. So the actual relationship forming information gathering, that is typically done in adoptions simply does not need to be done in a DHS adoption because DHS has investigated the family and actually signed that this is the family that should adopt the child.

The court denied Kramer's motion, ruling from the bench:

> According to the evidence provided by [the GAL], she provided no information learned in the adoption proceedings to either the victim or the County Attorney nor did she use any such information in these proceedings.
> Secondly, as this Court has listened to what information is typically normally obtained in DHS adoptions and in consideration how that might materially advance the victim's position in these proceedings, this doesn't seem that it would. . . . And it would require, to my total speculation, to conclude that it did or could.

Kramer was sentenced to a ten-year term of incarceration for each charge, with the two terms running concurrently with each other. He was also sentenced to a special sentence for both convictions, pursuant to Iowa Code section 903B.1. He appeals.

**II. Discussion.**

    **A. Conflict of Interest.**

In a posttrial motion, Kramer informed the court the GAL appointed for P.W. had previously represented him (and his wife) in an adoption proceeding involving DHS. He asked for a new trial pursuant to Iowa Rule of Criminal Procedure 2.24(2)(9), which allows the court to grant a new trial "[w]hen from any other cause the defendant has not received a fair and impartial trial." As we are reviewing the district court's denial of a motion for new trial,[3] we review the decision for an abuse of discretion.[4] *See, e.g.*, *State v. Atley*, 564 N.W.2d 817, 821 (Iowa 1997) (stating generally that denials of motions for new trial are reviewed for an abuse of discretion).

Kramer must establish both that there was a conflict of interest with the GAL's representation of him and then later his accuser and that he suffered an adverse effect. *See State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015) ("When neither the defendant nor his or her attorney raises the conflict of interest [before trial], the defendant is required to show an adverse effect on counsel's

---

[3] Insofar as Kramer argues trial counsel was ineffective for failing to raise the issue of the conflict sooner in the criminal proceedings, we preserve the argument for further development of the record in a possible later action. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("If the defendant requests that the court decide the claim on direct appeal, it is for the court to determine whether the record is adequate and, if so, to resolve the claim. If, however, the court determines the claim cannot be addressed on appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim."). The hearing on the motion for new trial was inadequate, in our view, to determine whether the conflict created an adverse effect for Kramer.

[4] Kramer maintains our review is de novo. If we were reviewing a timely conflict-of-interest allegation, he would be correct. *See State v. Vaughan*, 859 N.W.2d 492, 497 (Iowa 2015). The way the issue was preserved controls our review, and we are reviewing a denial of a motion for new trial. Our review is for an abuse of discretion.

performance to warrant reversal, even if the trial court should have known about the conflict and failed to inquire." (citing *Mickens v. Taylor*, 535 U.S. 162, 172–74 (2002))); *see also Cuyler v. Sullivan*, 446 U.S. 335, 337–38, 346–47 (1980) (where neither the codefendants or their joint attorneys raised the issue of a conflict of interest and the district court had no reason to know of the conflict, the defendant challenging his conviction on appeal was required to show an actual conflict existed). "[A]n adverse effect occurs when counsel fails to pursue a plausible strategy or tactic due to the existence of a conflict of interest." *Vaughan*, 859 N.W.2d at 501.

Iowa Rule of Professional Conduct 32:1.9(1) provides, "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives consent, confirmed in writing." If "there is a substantial relationship between the former and current representations," then Kramer has established that there was a conflict of interest. *See Doe ex. rel. Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 598 (Iowa 2002). "In determining whether a substantial relationship exists, we consider: (1) the nature and scope of the prior representation; (2) the nature of the present lawsuit; and (3) whether the client might have disclosed a confidence to her attorney in the prior representation which could be relevant to the present action." *Id.*

We need not determine if there was a conflict in the GAL's representation of P.W. because Kramer has not even attempted to establish how he was

negatively impacted.[5]  Rather, he maintains, "Since there was a conflict of interest in [the GAL] representing P.W. throughout the trial, a new trial is the only plausible remedy."  But "automatic reversal is required under the Sixth Amendment only when the trial court refuses to inquire into a conflict of interest over defendant's or counsel's objection."  *Vaughan*, 859 N.W.2d at 500.  As stated above, "[T]he defendant still has to establish that the alleged conflict materialized into an *actual* conflict."  *Id.* at 500.  And here, the court held a hearing at which the GAL testified, although equivocally and apparently with some difficulty of recall,  she did not share any privileged information with P.W. or the county attorney.  The GAL did, however, actively participate in Kramer's criminal trial proceedings.  On this record, we cannot find Kramer has established his trial was unfair as a result of the GAL's representation of the complaining witness.  Because Kramer has not established he was adversely affected, we cannot say the trial court abused its discretion when it denied his motion for new trial.

### B. Sufficiency of the Evidence.

Kramer challenges the sufficiency of the evidence to support his convictions.  Specifically, he maintains the sex-act element of sexual abuse in the third degree and the "touching" element of lascivious acts with a child require skin-to-skin contact between the perpetrator and the complaining witness, which was lacking from P.W.'s allegations.

---

[5] While *Vaughan* prevents us from finding the trial court abused its discretion in denying Kramer's motion for new trial, we are troubled by the attorney's willingness to accept the appointment representing the complaining witness against her former client.  Especially here, where the county prosecutor specifically requested the GAL by name and, when asked, the GAL was equivocal in whether she had ever revealed any information to the county attorney.

We review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Keeton*, 710 N.W.2d 531, 532 (Iowa 2006). "We consider all record evidence not just the evidence supporting guilt when we make sufficiency-of-the-evidence determinations." *Id.* (citation omitted). "However, in making such determinations, we also view the 'evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

*i. Sexual Abuse in the Third Degree.* Sexual abuse in the third degree is, as relevant here, when a "person performs a sex act" and "[t]he act is between persons who are not at the time cohabitating as husband and wife" and "[t]he other person is twelve or thirteen years of age." Iowa Code § 709.4(1)(b)(2) (2014). A "sex act" includes "[c]ontact between the finger or hand of one person and the genitalia or anus of another person." *Id.* § 702.17(4).

Here, P.W. testified that while he was wearing sweatpants, Kramer "used [her] fingers to kind of massage [his penis] that way." She testified that her hand was over his clothes and Kramer never disrobed. Kramer contends this does not meet the definition of sex act and argues that the legislature would have specified that it meant over-the-clothes touching was included in the act if that was its intention.

However, as Kramer recognizes, our supreme court has already decided otherwise. In *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994), the court held "that skin-to-skin contact is not required in order to establish a 'sex act' under section 702.17." As the court noted, "There is no language in the statute which would limit its scope in this way." *Pearson*, 514 N.W.2d at 455.

Kramer attempts to distinguish the actions P.W. testified about from the actions of the defendant in *Pearson*, noting the defendant in *Pearson* "touched his clothed penis to the clothed anus of the child, while simulating anal sex and making comments about ejaculating on him." Kramer's distinction is that he "made no such comments." But sexual comments are not a necessary part of a "sex act," as defined by the statute. *See* Iowa Code § 702.17. Thus, Kramer's distinction fails.

Additionally, insofar as Kramer maintains we should "narrow" the decision or find it was wrongly decided, it is not this court's role to do so. *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011) ("[W]e are not at liberty to overturn precedent of our supreme court.").

*ii. Lascivious Acts with a Child.* Iowa Code section 709.8(1)(c) prohibits "any person sixteen years of age or older to" "[c]ause the touching of the person's genitals to any part of the body of a child" "for the purpose of arousing or satisfying the sexual desires of either of them." Here, P.W. testified that Kramer used her feet (which may have been clothed in socks) to massage his penis. She testified Kramer was wearing sweatpants at the time and he never placed her feet under his clothing.

Similar to his argument above, Kramer maintains the "touching" element of section 709.8(1)(c) requires skin-to-skin contact. He argues the clothed contact is prohibited by the less serious offense[6] of indecent contact with a child—found in Iowa Code section 709.12—and ruling section 709.8 applies to clothed touching "creates substantial overlap." But again, our supreme court has considered and

---

[6] Iowa Code section 709.12 is an aggravated misdemeanor, as opposed to a felony.

ruled on this issue, stating, "[C]ommon ground would not be problematic. Overlap only prevents double convictions or double punishments, not a single conviction on one charge based on the prosecutor's charging discretion." *State v. Alvarado*, 875 N.W.2d 713, 718 (Iowa 2016). Additionally, the court noted such an interpretation would not "create overlap between section 709.8 and section 709.12 because the two statutes address different (though proximate) body parts." *Id.* at 720. The court ultimately ruled, "[A] person can touch another's pubes or genitals within the meaning of Iowa Code section 709.8 . . . without making skin-to-skin contact. As under section 702.17, there is no express requirement of skin-to-skin touching in section 709.8." *Id.*

Although the *Alvarado* court was asked to determine whether skin-to-skin contact was required under section 709.8(1)(a), where the person is fondling or touching the pubes of genitals of the child, as opposed to section 709.8(1)(c), where the person causes the touching of the person's genitals to the body of the child (the conduct of which Kramer was convicted), there is no reason to treat the two subsections differently. This is especially true considering the supreme court's holding considered section 709.8 generally. *See id.*

Because skin-to-skin contact is not a necessary element for a "sex act" within sexual abuse in the third degree or "touching" within lascivious acts as a child, the district court did not err in convicting Kramer of the two crimes.

**C. Written Findings.**

Next, Kramer maintains "the district court erred in finding that the alleged victim did not have inconsistencies in her stories or a motive to fabricate in the face of evidence to the contrary."

It is unclear what type of argument Kramer is making here. He cites a sufficiency-of-the-evidence standard for his preservation argument, but he asks for a new trial, which implies to us that he is challenging the weight of the evidence. *See State v. Smithson*, 594 N.W.2d 1, 3 (Iowa 1999) (reversing the conviction on the sufficiency-of-the-evidence grounds and remanding for the entry of a judgment of acquittal); *see also State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (discussing the court's power to grant a new trial when the verdict is contrary to the weight of the evidence). Additionally, Kramer attacks the court's finding that P.W. was credible, arguing she made inconsistent statements and had a motive to lie. Credibility determinations are properly challenged within a weight-of-the-evidence claim. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (noting "the power of the court is much broader [when reviewing a challenge to the weight of the evidence because it] may weigh the evidence and consider the credibility of witnesses"). Insofar as it is a weight-of-the-evidence challenge, this has not been preserved for our review.[7] *See State v. Demaris*, No. 03-0979, 2004 WL 159782, at *1 (Iowa Ct. App. May 26, 2004) (finding the defendant's weight-of-the-evidence challenge was not preserved following a bench trial, when the defendant failed to file a motion for new trial (citing *State v. Ellis*, 578 N.W.2d 655 (Iowa 1998))).

If we understand Kramer's argument as one that specifically challenges whether there is substantial evidence to support the court's factfinding that (1) P.W. did not make any material inconsistent statements and (2) she had no motive to

---

[7] We acknowledge that Kramer filed two motions for new trial, but neither specifically challenged the weight of the evidence.

lie, it is unclear what advantage Kramer receives from such a challenge.[8]  *See*

*State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997) ("We review sufficiency-of-

evidence challenges for correction of errors at law. The trial court's findings of guilt

are binding on appeal if supported by substantial evidence").  Even if he "wins"

these claims, he has done nothing to attack the district court's ruling that Kramer

was not credible when testifying about whether Kramer had used P.W.'s feet and

then her hand to massage his penis through his sweatpants.  Although the court

relied in part on the above findings to reach the conclusion P.W. was credible, it

also noted her testimony about the event "was reasonable and consistent with

surrounding circumstances," whereas Kramer's testimony that he had given P.W.

a hand massage "where either one or both of [them] would fall asleep" and her

hand would then "relax and fall" into his genital area was not credible.  As the court

ruled:

> The testimony of the Defendant and [his wife] that P.W.'s hand would
> fall into the Defendant's lap when P.W. and Defendant would both
> fall asleep during a hand massage is not reasonable under the
> circumstances.  What they say is conceivable only in the unlikely
> situation that P.W. and Defendant would fall asleep at precisely the
> same time.  It otherwise makes little sense.  If the Defendant fell
> asleep first it would seem he would cease massaging and it does not
> seem likely that P.W. would have allowed her hand to fall onto the
> Defendant's genitals.  On the other hand, if P.W. would have fallen
> asleep first, it seems there would have been no legitimate purpose
> for the Defendant to continue to massage P.W.'s hand while she
> slept and until the Defendant also fell asleep and allowing P.W.'s
> hand to then fall onto his genitals.  In short, the Defendant's
> explanation as to why P.W.'s hand came into contact with his genitals

---

[8] Even if we determine there is not substantial evidence to support the district court's finding that P.W. had no motive to lie, that is not the same thing as finding P.W. actually lied.  Similarly, P.W. could have made inconsistent statements—such as writing in her journal that Kramer "showed it to her" but testifying that she had never seen his penis— but still been found credible regarding whether Kramer used her hand and feet to massage his penis.

is not reasonable and diminishes the credibility of the Defendant and his wife.

Even if Kramer was successful in claiming substantial evidence does not support the specific findings of fact he has challenged, viewing the evidence in the light most favorable to the State, there is sufficient evidence to convict Kramer of sexual abuse in the third degree and lascivious acts with a child.

### D. Weight of the Evidence: P.W.'s Journal.

Kramer maintains the district court erred in giving the writings in P.W.'s journal no weight. At trial, Kramer offered what he contended were some photocopied pages from P.W.'s journal. When asked if she recognized the document, P.W. testified she "d[id]n't know what journal or anything this would be in." When asked if it was her handwriting, P.W. stated it "[l]ooks like it" and said it "might have been" from one of her journals. She testified, "Maybe one of my old journals maybe. I'm not sure." When asked if it was a true and accurate representation of what she wrote, she responded, "I can't read some of the stuff on here. I can't make out some of this." The State objected to the admission of the page, claiming there was a lack of foundation as to identification or accuracy. The district court admitted the document as an exhibit.

In its written ruling, the court ruled, "Considering all the circumstances, including the fact the original notebook was not provided or identified and the source of the photocopy was not otherwise established, the court has given this exhibit no weight." Kramer maintains this was an abuse of discretion.

As noted above, in order to preserve a challenge to the weight of the evidence, Kramer must have filed a motion for new trial alleging the same. *See*

Iowa R. Crim. P. 2.24(2)(b)(6); *State v. McCullough*, No. 11-1949, 2012 WL 5541238, at *4 (Iowa Ct. App. Nov. 15, 2012) ("The State contends [the defendant] waived this argument by failing to raise a weight-of-the-evidence argument in his motion for new trial or at the hearing on that motion. Because the defendant did not advance that ground for a new trial, the district court did not address the weight of the evidence in its ruling. We agree with the State that [the defendant] did not preserve error on the weight-of-the-evidence argument."). Although he filed two motions for new trial, neither raised the issue of alleged error.

This claim has not been preserved for our review, and we do not consider it further. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

### E. Second Deposition.

Kramer claims the district court should not have prevented him from deposing P.W. a second time after the State filed an amended and substituted trial information. While defendants generally have a right to depose witnesses to be called on behalf of the State, "the right is subject to reasonable regulation [by the trial court.]" *State v. Clark*, 814 N.W.2d 551, 563 (Iowa 2012) (alteration in original). The right is provided by Iowa Rule of Criminal Procedure 2.13, which "does not delineate a right to a second deposition." *Id.* at 564. Additionally, "the right to present a defense does not afford a criminal defendant the right to depose witnesses. A criminal defendant has no due process right to pretrial discovery." *Id.* at 561. Thus, we review for an abuse of discretion. *See State v. Neiderbach*,

837 N.W.2d 180, 190 (Iowa 2013) ("Nonconstitutional challenges to discovery rulings are reviewed for an abuse of discretion.").

Kramer maintains the district court should have allowed him to depose P.W. a second time because his "case vastly changed after the State amended the charges" from one aggravated misdemeanor to two class "C" felonies. However, as the district court recognized, the changed charges were the result of information provided by P.W. in her initial deposition and "all are based on the same conduct and incident."[9] Additionally, in its ruling, the court invited Kramer to "fil[e] an application for a further deposition of the child victim specifying his intended area(s) of inquiry and why the current deposition is not sufficient in those regards." Kramer did not do so before trial, and he has not elucidated on appeal how a second deposition would have benefitted him.

Under these circumstances, we cannot say the district court abused its discretion in preventing Kramer from taking a second deposition of P.W.

**F. Admission of Deposition Testimony.**

Kramer maintains the district court erred in admitting P.W.'s deposition over his objection at trial. Kramer maintains the deposition testimony was inadmissible hearsay. *See State v. Rainsong*, 807 N.W.2d 283, 289 (Iowa 2011) ("If the declarant would reasonably expect the prosecution to use his or her extrajudicial

---

[9] Kramer also maintains:
> At the time of the first deposition, the fact that there were clothes on or off was completely immaterial. The details and nature of the touching were also somewhat immaterial, given the fact that any touching of the area through the clothing satisfied the elements of indecent contact with a child. That is not necessarily true for the elements of sex act and touching for sex abuse in the third degree and lascivious acts with a child.

As we have already rejected this argument above, we do not consider it again.

statements contained in affidavits or depositions at trial, the extrajudicial statements are testimonial hearsay."). We review a court's hearsay ruling for correction of errors at law. *See State v. Elliot*, 806 N.W.2d 660, 667 (Iowa 2011). "[A]dmission of hearsay evidence is prejudicial to the nonoffering party unless the contrary is shown." *Id.* (quoting *State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998)).

At trial, P.W. testified she was getting a foot massage from Kramer when she fell asleep, later awaking to find him using her foot to massage his penis through his clothing. During cross-examination, defense counsel asked if P.W. remembered being asked during her deposition to tell him in her own words what she remembered. He then read her statement from her deposition, "[W]hat happened was I started to fall asleep and everything and I was really comfy and I fell asleep and then I came in and out of sleep. I found myself with my foot in [Kramer's] area," before asking, "So is that testimony what you said at the deposition . . . different than what you said here today?" In response, the State offered various lines from eight pages of P.W.'s deposition to rebut the defense's implication P.W. had changed her testimony.

The court admitted the lines offered by the State, ruling:

> The Court will be glad to receive into evidence any portion of the deposition that relates to that portion which has been offered by [defense counsel] and also any portion of it that goes to the—goes to rebut the implication that the witness is changing her testimony regarding the massaging or anything else.

Iowa Rule of Evidence 5.801(d)(1)(B) provides that a declarant-witness's prior statement, when the declarant testifies and is subject to cross-examination about that statement, and which is "consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently

fabricated it or acted from a recent improper influence or motive in so testifying," is not hearsay. Here, Kramer maintains that the deposition testimony admitted by the district court was not directly responsive to the defense's implication P.W. had changed her story by testifying Kramer was giving her a foot massage at the time she initially fell asleep. The State concedes in its appellate brief that the excerpts "were not directly responsive to the purported impeachment."

However, the State was allowed to offer P.W.'s prior consistent statements—even those not directly on point regarding when or whether she fell asleep—to rebut the defense's implication her version of events had been recently fabricated and to rehabilitate P.W.'s credibility. *See, e.g.*, *State v. Johnson*, 539 N.W.2d 160, 163 (Iowa 1995) ("[W]e have held the use of prior statements consistent with a witness's testimony is appropriate to rehabilitate an impeached witness.")[10]; *State v. Brotherton*, 384 N.W.2d 375, 380 (Iowa 1986) (holding prior consistent statements of sexual abuse victim relayed to a social worker were admissible to rebut the implication of improper influence or motive on cross-examination). The State could offer the evidence "to rebut the defendant's express and implied allegations of improper motive." *Johnson*, 539 N.W.2d at 163 (citing David F. Binder*, Hearsay Handbook* § 2.12, at 70 (3d ed. 1991) ("The credibility of a witness is impeached when a party suggests that the witness is an unreliable historian. Such suggestion may be made by . . . charging or implying that the

---

[10] Since *Johnson*, a second component of whether statements are admissible under rule 5.801(d)(1)(B) is whether the prior consistent statement was made before the alleged improper motive to fabricate arose. 539 N.W.2d at 165. Here, we understand defense counsel's implication at trial to be that P.W.'s story or version of events had changed since her deposition; thus the deposition testimony used by the State preceded the time of the alleged fabrication. Neither party raised the issue of timing in their appellate briefs.

witness's testimony is the product of conscious fabrication.")).  Insofar as the admitted portion contained more than prior consistent statements, we note the district court clearly articulated the purpose for which the deposition was admitted and its intention to restrict the evidence to such use.  *See Jasper v. State*, 477 N.W.2d 852, 857 (Iowa 1991) ("[In a bench trial, a] court's mere knowledge of inadmissible evidence does not predicate error if the court states it will not consider the inadmissible evidence.").

We cannot say the district court erred in this evidentiary ruling.

## III. Conclusion.

Having considered each of Kramer's claims and finding no reversible error, we affirm his convictions.

**AFFIRMED.**

Vaitheswaran, P.J., concurs;  McDonald, J., concurs specially.

**MCDONALD, Judge** (concurring specially)

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." Article I, section 10 of the Iowa Constitution provides the same guarantee. "The right to counsel is the right to the effective assistance of counsel." *State v. Williams*, 207 N.W.2d 98, 104 (Iowa 1973). The accused's right to the effective assistance of counsel can potentially be compromised when defense counsel operates under conflict of interest. This is not such a case. I thus disagree with the rationale set forth in section II.A, and I write separately on that issue only.

Kramer presents this case as a conflict-of-interest case, and the majority analyzes his claim within the framework set forth in *State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015). In *Vaughan*, conflicted counsel represented the defendant during pretrial proceedings. *See id.* at 501. Conflicted counsel was removed from the case well before trial, and conflict-free counsel represented the defendant throughout the remainder of the proceedings. *See id.* Nonetheless, the defendant claimed the entire proceeding was tainted and new trial was required. In resolving the claim, the supreme court surveyed the doctrine regarding attorney conflicts of interest. *See id.* at 498-501. After reviewing the relevant precedents, the supreme court rejected the defendant's claim, concluding the defendant failed to "demonstrate that the conflict had an adverse effect on counsel's performance." *Id.* at 501. "[A]n adverse effect occurs when counsel fails to pursue a plausible strategy or tactic due to the existence of a conflict of interest." *Id.* The salient point in *Vaughan*, for present purposes, is the defendant claimed *his defense counsel*

was operating under a conflict of interest that had an adverse effect on *his defense counsel's* performance. *See id.* 498–99 ("Vaughan next alleges his pretrial counsel, Henson, labored under an impermissible conflict of interest that requires us to grant a new trial.").

As in *Vaughan*, the relevant precedents address *defense counsel's* conflict or alleged conflict of interest. *See, e.g., Mickens v. Taylor*, 535 U.S. 162, 174 (2002) ("[I]t was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance."); *Wood v. Georgia*, 450 U.S. 261, 262–63 (1981) (raising sua sponte claim that the "petitioners may be in their present predicament because of the divided loyalties of their counsel"); *Cuyler v. Sullivan*, 446 U.S. 335, 337 (1980) ("The question presented is whether a state prisoner may obtain a federal writ of habeas corpus by showing that his retained defense counsel represented potentially conflicting interests."); *Holloway v. Arkansas*, 435 U.S. 475, 476–77 (1978) (resolving claim where codefendants' appointed counsel was "confronted with the risk of representing conflicting interests" due to joint representation of codefendants); *State v. McKinley*, 860 N.W.2d 874, 879 (Iowa 2015) (addressing claim involving defense counsel's conflict of interest); *State v. Smitherman*, 733 N.W.2d 341, 345 (Iowa 2007) ("On appeal, Smitherman [argues] his state and federal constitutional rights were violated because of an impermissible conflict of interest that was created by the [public defender's] simultaneous representation of the prosecution's witness and himself."); *State v. Watson*, 620 N.W.2d 233, 235 (Iowa 2000) ("On appeal, Watson asserts that his attorney . . . had an actual conflict of interest or a serious potential conflict of interest when he maintained dual representation of the

defendant and . . . a key prosecution witness whose interests were adverse to the defendant.").

These cases are inapplicable here. Kramer was represented by counsel during this criminal proceeding. Kramer does not contend his defense counsel was operating under a potential or actual conflict of interest. Nor does Kramer contend his defense counsel's non-existent potential or actual conflict of interest had an adverse effect on defense counsel's performance. Instead, Kramer claims the victim's guardian ad litem—not lawyer—may have had a conflict of interest due to the guardian ad litem's prior representation of Kramer in an adoption proceeding substantially unrelated to this case. The primary flaw in Kramer's argument is the failure to recognize the significance of the distinction between concurrent- and successive-representation cases and the significance of the order of representation in successive-representation cases. If anything, this is a successive-representation case. In the typical successive-representation case, the lawyer first represents a client in one matter and then represents the defendant in a subsequent matter in which the prior client is a witness or victim. *See, e.g., United States v. Johnson*, 131 F.Supp.2d 1088, 1093 (N.D. Iowa 2001) (explaining a successive-representation case as one "where an attorney representing a defendant has previously represented codefendants or trial witnesses"). In the typical case, defense counsel's representation of the defendant in the subsequent proceeding might be compromised due to the prior representation, e.g., defense counsel might not conduct vigorous cross-examination of the former client. *See id.* at 1096. In the typical case, it is defense counsel's advocacy that is at issue. Even then, our supreme court has required the defendant to show an actual conflict

of interest. *See Pippins v. State*, 661 N.W.2d 544, 550 (Iowa 2003) ("We conclude that, in this case, there was not a continuing relationship between the defense counsel and the victim. . . . There are, therefore, no divergent interests that could provide a basis to claim a Sixth Amendment violation."). In this case, the first representation was of the defendant in an adoption proceeding. In the successive representation, the guardian ad litem merely advised the victim. Kramer's defense counsel's conduct is simply not at issue.

The application of our conflict-of-interest precedents on the facts presented here "entails the pounding of a square peg into a round hole." *United States v. Poe*, 428 F.3d 1119, 1122 (8th Cir. 2005). "[T]he right to conflict-free representation . . . [under] the Sixth Amendment . . . is held by criminal defendants objecting to their own attorneys." *Page v. Ark. Dep't of Corr.*, 49 Fed. Appx. 663, 665 (8th Cir. 2002) (per curiam) (unpublished). In successive-representation cases in which a witness or victim's counsel in a criminal proceeding had previously represented the defendant, courts have found the conflict-of-interest analysis inapplicable or have otherwise rejected the claim. *See, e.g., United States v. Green*, 701 F.3d 541, 543 (8th Cir. 2012) (rejecting application of conflict-of-interest cases and stating the doctrine "applies where the trial court fails to inquire regarding a possible conflict of interest related to the attorney representing the defendant"); *United States v. Taft*, 221 Fed. Appx. 277, 279 (4th Cir. 2007) (per curiam) (unpublished) (rejecting right-to-counsel and due process claims where defendant's former lawyer represented witness in criminal proceeding against defendant); *Poe*, 428 F.3d at 1122; *People v. Pepe*, 689 N.Y.S.2d 310, 313 (N.Y. App. Div. 1999) ("[W]e conclude that, because defendant was represented by

different counsel at his arraignment and through the completion of the trial, he failed to establish that the continued representation of those prosecution witnesses by his former attorneys bore a substantial relation to the conduct of his defense."); *State v. Sterling*, 661 S.E.2d 99, 102 (S.C. 2008) ("Accordingly, we hold that Respondent suffered no Sixth Amendment violation of his right to counsel and that Respondent failed to show he was otherwise prejudiced by [counsel's] representation."); *State v. Nance*, No. 36884-6-II, 2009 WL 2437240, at *17 (Wash. Ct. App. 2009) (rejecting claim that district court should have excluded the testimony of witness represented by defendant's former counsel); *State ex rel. Dunlap v. McBride*, 691 S.E.2d 183, 194 (W. Va. 2010) ("In the instant case, the alleged conflict of interest does not involve trial counsel. Mr. Dunlap's claim of conflict of interest involves a former counsel, Mr. Kratovil, who withdrew from representing him prior to his indictment. Under the unique facts of this case, we do not believe that the 'presumed prejudice' that flows from a showing of an actual conflict applies.").

Because *Vaughan* and the similar cases are inapplicable here, the narrow question presented is whether the district court abused its discretion in denying Kramer's motion for new trial on the ground he did not receive a fair and impartial trial. "[T]o show an abuse of discretion, one generally must show the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Atley*, 564 N.W.2d 817, 821 (Iowa 1997). Here, Kramer does not identify how the guardian ad litem's conduct had any impact on his trial. Absent even an allegation that the defendant's trial rights were impacted

by the guardian ad litem's limited participation in this case, I cannot conclude the district court abused its discretion in denying the defendant's motion for new trial.

For these reasons, I concur in the judgment.